Filed 2/15/22  Neufinck v. Fernandez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JENS NEUFINCK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIA FERNANDEZ et al.<br><br>    Defendants and<br>    Respondents. | B307277<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV28646) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Reversed and remanded with directions.

Law Office of Neal S. Zaslavsky, Neal S. Zaslavsky and Karen I. Shanbrom for Plaintiff and Appellant.

The ByrneLaw Office and John P. Byrne for Defendants and Respondents Maria Fernandez, Marcela C. Fernandez, Melina Byrne and William Fernandez.

———————————

Jens Neufinck sued his landlord, Maria Fernandez, and her three adult children (collectively Fernandez defendants) for breach of contract, violation of the Los Angeles Rent Stabilization Ordinance (RSO) (Los Angeles Mun. Code, § 151.00 et seq.), abuse of process and several related causes of action after Fernandez attempted to evict Neufinck for making unauthorized modifications to her property to provide a roaming area for his pet tortoises (including an emotional support tortoise). The trial court granted the Fernandez defendants' special motions to strike the first amended complaint pursuant to Code of Civil Procedure section 425.16,[1] ruling each of the seven causes of action arose from protected activity, which included the filing of an unlawful detainer action; Neufinck's claims were barred in large part by the absolute litigation privilege (Civ. Code, § 47, subd. (b)); and he had otherwise failed to make a prima facie factual showing sufficient to sustain a favorable judgment. Neufinck has appealed from the judgment subsequently entered in favor of the Fernandez defendants.

We reverse the judgment and the order granting the special motions to strike to the extent each of the causes of action other than the sixth cause of action for abuse of process is based on allegations Fernandez improperly attempted to modify her lease with Neufinck and unlawfully collected rent, conduct that is not protected speech or petitioning activity within the meaning of section 425.16.

---

[1]    Statutory references are to this code unless otherwise stated.

# FACTUAL AND PROCEDURAL BACKGROUND

1. *The Legion Lane Property and Neufinck's Lease Agreement*

Fernandez owns a rental duplex property located on Legion Lane in Los Angeles, which is subject to the RSO. The duplex's front unit (3812 Legion Lane) and rear unit (3814 Legion Lane) share a single-lane driveway running adjacent to the property. Fernandez, who is in her 80's, speaks little English. Her three adult children, William Fernandez, Marcela Fernandez and Melina Byrne, sometimes help translate for Fernandez when she needs to communicate with the Legion Lane tenants. None of Fernandez's children possesses any legal interest in the Legion Lane property.

In 2012 Fernandez, Neufinck and a cotenant entered into a two-year lease agreement for 3812 Legion Lane.[2] Neufinck requested permission to keep four tortoises at the property; and William Fernandez, interpreting for his mother, agreed. The lease expressly provided Neufinck could keep four tortoises outdoors on the premises. The lease also contains an integration clause and required any modifications be in writing and signed by landlord and tenant.

2. *The Dispute Regarding Neufinck's Use of the Property's Common Areas*

When the long-term tenant living at 3814 Legion Lane moved out in mid-2018, Fernandez hired contractors to perform repairs to the rear unit's garage. The contractors reported they were unable to access the rear garage. Fernandez visited the property and discovered that Neufinck had bolted physical

---

[2] The lease renewed on a month-to-month basis at the end of the initial term.

barriers into and across the driveway and had placed a lock on the driveway's entry gate. Neufinck had also erected a barrier preventing 3814 Legion Lane's tenants from accessing a shared patio space. Fernandez believed Neufinck had closed off the property's driveway and common areas to allow his tortoises to roam freely on those parts of the property.

Fernandez asked Neufinck to remove the lock on the driveway gate and the physical barriers in the driveway. When Neufinck did not comply, Fernandez returned with one of her daughters to ask Neufinck in person to remove the obstructions. Neufinck refused, screaming at Fernandez's daughter and slamming the door in her face. Fernandez subsequently removed the gate lock; but Neufinck closed it again using zip ties, preventing workers from accessing ongoing construction at 3814 Legion Lane. Neufinck also parked his car in front of the driveway gate.

Fernandez contends the property's shared driveway provides access to the duplex's rear unit, as well as to parking spaces for both units at the back of the property. Neufinck's barriers and gate lock deprived the rear unit of off-street parking, prevented both units' tenants from parking in the designated parking area and obstructed both fire escape passage and common area access. Fernandez asserted she had never permitted Neufinck to block the shared driveway's entry or to use the driveway area for his tortoises.

Neufinck, in contrast, claimed William Fernandez had assured him during lease negotiations that the part of the property's backyard reaching from the driveway gate to the side gate exclusively belonged to his unit (3812 Legion Lane) and the tortoises could use that area. William Fernandez denied he told

4

Neufinck he could block the shared driveway or use the driveway area for his tortoises.

3. *The 2018 and 2019 Letters and Notices to Neufinck*

On August 23, 2018 Fernandez, through counsel, sent Neufinck a letter offering to renew the lease with a provision prohibiting pets. The same day Fernandez's counsel served Neufinck with a 30-day notice to perform covenant or quit, notifying Neufinck that Fernandez would initiate legal proceedings if he did not remove unapproved alterations and obstructions from the property's shared driveway.

In response to the proposed new lease, Neufinck obtained a letter from an investigator with the Los Angeles Housing and Community Investment Department stating a landlord may not unilaterally change the terms of the tenancy and then evict the tenant for violation of the added covenant unless the tenant has agreed in writing to the new term. He also obtained a letter from a licensed clinical social worker recommending that Neufinck be allowed to keep a tortoise as an emotional support animal. In response to the 30-day notice, Neufinck hired a construction company to fill holes he had drilled in the driveway. He contended this work fully complied with the notice.

On March 15, 2019 Fernandez's counsel sent Neufinck a notice of change that would remove the prevailing party attorney fee provision in the written lease and instead require each party to bear its own attorney fees and costs in any action to enforce the lease.

On May 24, 2019 Fernandez's counsel posted a three-day notice to perform or quit on Neufinck's door, demanding that Neufinck stop parking his vehicle across the property's shared driveway and stop any other practices "making passage upon the

5

common driveway . . . inaccessible to other tenants." Fernandez and Neufinck disagree whether Neufinck complied with this notice.

On October 2, 2019 Fernandez's counsel sent Neufinck another notice of changes to the lease limiting a prevailing parties' fee and costs recovery to $500 and adding a mandatory arbitration provision. Neufinck responded in writing again asserting he could not be evicted for noncompliance with unilateral lease term changes.

4. *The Unlawful Detainer Action*

On June 7, 2019 Fernandez filed an unlawful detainer complaint against Neufinck in Los Angeles Superior Court. Fernandez alleged Neufinck had failed to comply with the May 24, 2019 three-day notice to stop obstructing the Legion Lane property's driveway.

In late June and early July 2019 Fernandez requested entry of Neufinck's default, attaching a registered process server's proof of personal service of the complaint on Neufinck. The trial court entered a default and default judgment for Fernandez's possession of 3812 Legion Lane and issued a writ of execution for possession on July 8, 2019.

On July 23, 2019 a deputy sheriff served Neufinck with a copy of the writ and a five-day notice to vacate 3812 Legion Lane. On July 29, 2019 Neufinck applied ex parte to set aside the default and quash service of process, asserting he had not been served with the unlawful detainer complaint. Fernandez filed an opposition. Following an August 14, 2019 hearing the court vacated the default judgment.

6

Fernandez thereafter requested the unlawful detainer complaint be dismissed without prejudice. A dismissal was entered on September 4, 2019.

5. *Neufinck's Complaint*

On August 13, 2019 Neufinck filed a verified complaint and on October 31, 2019 a verified first amended complaint against Fernandez and her three children,[3] alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the covenant of quiet enjoyment, violations of the RSO, intentional infliction of emotional distress, abuse of process and violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[4] Neufinck sought damages and injunctive and declaratory relief.

The first amended complaint alleged the Fernandez defendants had participated in a common scheme to force Neufinck to involuntarily vacate his home, including by abusing judicial processes, unlawfully attempting to reduce housing services to which he was entitled by the terms of his lease without a statutorily mandated rent reduction and demanding he pay rent in an amount that materially exceeded the lawful rent based on their partial performance and nonperformance of

---

[3] Neufinck also named as a defendant the process server who had signed the proof of personal service of the unlawful detainer complaint. The process server is not a party to Neufinck's appeal.

[4] The first amended complaint included as an exhibit the 2012 lease, which had not been attached to the original complaint, requested at least $3 million in noneconomic damages, added allegations about continued harassment by the Fernandez defendants subsequent to Neufinck's filing of his complaint and made a number of other largely nonsubstantive revisions.

7

contractual and legal obligations to him.[5]  The pleading specifically identified as elements of the Fernandez defendants' unlawful scheme the August 23, 2018 30-day notice; the August 23, 2018 offer to renew the lease with terms that would prohibit him from keeping his tortoises; the subsequent notice of a proposed change in lease terms regarding attorney fees in an action to enforce the lease; the three-day notice to quit posted on May 24, 2019; the unlawful detainer proceedings, which culminated in the delivery of a notice to vacate by the Sheriff's Department; and the failure to pay interest on his security deposit as required by the RSO.  Each of the causes of action incorporated these allegations of misconduct.

6.  *The Fernandez Defendants' Special Motions To Strike*

a.  *Ex parte application for leave to file special motions to strike*

On December 10, 2019 the Fernandez defendants applied ex parte for leave to file special motions to strike the first amended complaint pursuant to section 425.16.  They argued the proposed motions were timely; Neufinck had waived any timeliness argument through his suggestion that they wait until he filed his first amended complaint to respond;[6] and,

---

[5]  Neufinck alleged the Fernandez defendants' efforts to force him to move were motivated by their desire to bring in a new tenant, who could be charged more rent than could legally be collected from Neufinck under the RSO.

[6]  Counsel for the Fernandez defendants explained in the ex parte application that, after the initial complaint was served, the parties had stipulated to October 31, 2019 as the date to respond to the complaint.  Meanwhile, as a result of a meet-and-confer regarding an intended demurrer, Neufinck stated he

8

alternatively, the court should exercise its discretion under section 425.16, subdivision (f), to permit the late-filed motions. Neufinck opposed the request, contending relief was not available on an ex parte basis and urging the court to deny any special motion to strike as untimely.

The trial court granted the application, authorizing the Fernandez defendants to file special motions to strike the first amended complaint within 20 days (a date that was also 60 days from the date of filing of the first amended complaint). On December 30, 2019 each of the Fernandez defendants filed a substantially similar special motion to strike.

### b. *The moving papers*

The moving papers argued each of the causes of action in Neufinck's first amended complaint arose from Fernandez's prosecution of the unlawful detainer action and other protected petitioning activity in anticipation of the filing of that proceeding. All of those actions, they asserted, although alleged by Neufinck to constitute unlawful harassment, were absolutely privileged under the litigation privilege in Civil Code section 47, subdivision (b). The Fernandez children's motions additionally argued they were not parties to, and owed no duties under, the lease, and none of them served as landlord or property manager for the Legion Lane property.

---

would be filing a first amended complaint ("as a matter of right") to correct any perceived deficiencies and indicated the defendants should wait to file their responses to the amended pleading.

c. *Neufinck's oppositions*

In his oppositions Neufinck contended the gravamen of his first amended complaint was the Fernandez defendants' "ongoing and repeated efforts to harass him into vacating his rent-controlled home" and argued the Fernandez defendants had failed to show those actions constituted protected petitioning activity. Neufinck also disputed the applicability of the litigation privilege to the Fernandez defendants' conduct and insisted he had established his claims had sufficient merit to survive the special motions to strike.

With his oppositions to the motions Neufinck submitted his own declaration, as well as declarations from previous Legion Lane property tenants. Neufinck declared William Fernandez had assured him prior to his signing the lease that the part of the backyard reaching from the front gate to the side gate belonged exclusively to 3812 Legion Lane and that Neufinck's tortoises could roam freely in that area. Neufinck also declared a licensed clinical social worker had certified one of his tortoises as an emotional support animal, the City of Los Angeles had previously determined Fernandez's attempts to unilaterally change the terms of the lease violated the RSO, and the Fernandez defendants' conduct had intentionally caused him great emotional distress. The trial court sustained the Fernandez defendants' objections to these portions of Neufinck's declaration.

Former 3814 Legion Lane tenant Rosa Ching declared she had been told when moving in "that the entire driveway and side yard belonged to" 3812 Legion Lane. Previous 3812 Legion Lane tenant Eugene Adamov declared the landlord had given him and his roommate "the use of the front driveway to park our vehicles,"

10

as well as "exclusive use of the side yard." The trial court also sustained the Fernandez defendants' objections to this evidence.

7. *The Order Granting the Special Motions To Strike*

On June 26, 2020 the trial court held a consolidated hearing on the Fernandez defendants' special motions to strike. After taking the matter under submission, on July 16, 2020 the trial court granted the motions. The trial court found each of the causes of action in Neufinck's first amended complaint arose from protected petitioning activity—the prosecution of an unlawful detainer action and the service and filing of legal documents required to initiate that action. Separately analyzing each of the seven causes of action, the court ruled Neufinck had not established a probability of prevailing on any of his claims, explaining the litigation privilege applied to publications made in, and relating to, good faith judicial proceedings.

The court entered judgment in favor of the Fernandez defendants on August 10, 2020. Neufinck filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC. v. City of Carson*

(2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a special motion to strike under section 425.16, the trial court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) To make its

12

determination the court must consider the parties' pleadings and affidavits or declarations describing the facts on which liability or defenses are predicated. (§ 425.16, subd. (b)(2).)

As to the first step of the analysis, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at pp. 1062-1063.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni, supra,* 11 Cal.5th at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060.)

A motion pursuant to section 425.16 need not challenge an entire cause of action as pleaded in the complaint. (*Bonni, supra,* 11 Cal.5th at p. 1010; *Baral, supra,* 1 Cal.5th at p. 382.) Rather, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010; accord, *Baral*, at p. 395.)

"As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Sweetwater Union High School*

13

*Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940;[7] accord, *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "'We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'" (*Monster Energy*, at p. 788; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [the court should grant the section 425.16 motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim'"].)

---

[7] Although the Supreme Court in *Sweetwater Union High School Dist. v. Gilbane Building Co., supra*, 6 Cal.5th 931 referred generally to "competent admissible evidence," the Court held evidence that is potentially admissible at trial, but not presented in admissible form, could be considered in determining whether the plaintiff had demonstrated a probability of success on the merits: "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Id.* at p. 949.)

We review de novo an order granting or denying a special motion to strike under section 425.16.  (*Wilson, supra*, 7 Cal.5th at p. 884; *Park, supra*, 2 Cal.5th at p. 1067.)

2. *The Trial Court Acted Within Its Discretion in Permitting the Filing of the Special Motions To Strike*

Section 425.16, subdivision (f), provides a special motion to strike may be filed within 60 days of the service of the complaint or, "in the court's discretion, at any later time upon terms it deems proper."  (See *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639 (*Newport Harbor*) ["subject to the trial court's discretion under section 425.16, subdivision (f), to permit late filing, a defendant must move to strike a cause of action within 60 days of service of the earliest complaint that contains that cause of action"].)  The time limit on filing enables the trial court to resolve an "'anti-SLAPP claim at the outset of the litigation before the parties have undertaken the expenses of litigation that begin to accrue after the pleading stage of the lawsuit.'"  (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 783 (*Platypus Wear*); see *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1188 (*Hewlett-Packard*).)

Although Neufinck contends the trial court abused its discretion by permitting the Fernandez defendants to file their special motions to strike in late December 2019 targeting causes of action Neufinck had originally pleaded in August 2019, he fails to show, as he must, how allowing the modestly late motions was in any way inconsistent with the purpose of section 425.16.  (See *San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624 [court enjoys considerable

15

discretion in determining whether to allow the late filing of a special motion to strike].)

"In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings. [Citations.] Other relevant factors include the length of the delay, the reasons for the late filing, and any undue prejudice to the plaintiff." (*San Diegans for Open Government v. Har Construction, Inc.*, *supra*, 240 Cal.App.4th at p. 624; accord, *Hewlett-Packard*, *supra*, 239 Cal.App.4th at p. 1188.) When the Fernandez defendants sought leave to file their motions, the case was just four months old and not yet at issue; no hearings had occurred; and no discovery had been propounded. And Neufinck points to no prejudice he suffered as a result of the trial court's order.

*Platypus Wear*, *supra*, 166 Cal.App.4th 772, upon which Neufinck relies, confirms the appropriateness of the trial court's exercise of discretion in this case. The defendant in *Platypus Wear* was granted leave to file a special motion to strike almost two years after having answered the operative complaint and after completion of substantial discovery. By the time of the hearing on the motion, the discovery cutoff date had passed and trial was scheduled to begin in one week. (*Id.* at pp. 775-784.) Our colleagues in Division One of the Fourth District held the trial court had abused its discretion in permitting the late filing, which undermined one of the basic purposes of the statute— "prompt resolution of disputes before significant pretrial discovery expenses are incurred." (*Id.* at pp. 776, 784; see also *Hewlett-Packard*, *supra*, 239 Cal.App.4th at pp. 1188-1189 ["A late anti-SLAPP motion cannot fulfill the statutory purpose if it

16

is not brought until after the parties have incurred substantial expense. . . . As [] costs accumulate in the course of conventional discovery and motion practice, the capacity of an anti-SLAPP motion to satisfy the statutory purpose diminishes. And as the utility of the motion diminishes, so does the justification for the statute's deviations from more conventional modes of disposition. It is therefore to be expected that every case will come to a point beyond which an anti-SLAPP motion simply cannot perform its intended function"].) Here, in contrast, the special motion was filed and heard before any discovery or other significant pretrial expenses had been incurred. Far from undermining the purpose of section 425.16, permitting the Fernandez defendants to challenge Neufinck's first amended complaint in December 2019 before additional litigation activity had occurred advanced the fundamental goal of the statute.

Neufinck's additional argument that under *Newport Harbor*, *supra*, 4 Cal.5th 637 it was error to permit the Fernandez defendants to move to strike causes of action in an amended complaint that were originally pleaded in the initial complaint is equally flawed. As Neufinck states, the Supreme Court in *Newport Harbor* held a defendant normally must move to strike a cause of action "within 60 days of service of the earliest complaint that contains that cause of action." (*Id.* at p. 640.) But the Court expressly provided that general rule was "subject to the trial court's discretion under section 425.16, subdivision (f), to permit late filing." (*Ibid*.) The *Newport Harbor* Court was considering the potential for abuse if a defendant were able to use the special motion to strike as a means to obtain dismissal of claims in the middle of litigation. (*Id.* at p. 645.) To minimize that problem, the Court held, "section 425.16,

17

subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion)." (*Ibid.*) It was well within the trial court's discretion under section 425.16, subdivision (f), to permit the Fernandez defendants to move to strike the causes of action in the first amended complaint, filed less than three months after the original complaint and prior to any motion practice or discovery.

Finally, although Neufinck questions the trial court's authority to grant an ex parte application for leave to file a special motion to strike more than 60 days after service of the complaint, given the trial court's broad discretion under section 425.16, subdivision (f), as well as the Legislature's intent to conserve resources by permitting an early examination of the merits of a covered lawsuit, we are aware of no reason—and Neufinck suggests none—that such leave cannot be sought through an ex parte application.[8] As for Neufinck's contention the Fernandez defendants failed to comply with California Rules of Court, rule 3.1202(c), which requires an applicant for ex parte relief to provide a declaration demonstrating the statutory basis for granting relief ex parte—a procedural argument he made in the trial court in his written opposition to the application— Neufinck has failed to argue, let alone show, that omission was

---

[8] Given the circumstances described in footnote 6, we have serious doubt whether the Fernandez defendants required leave of court to file their special motions to strike, but we need not address that issue.

prejudicial and would justify reversal of the trial court's order granting leave to file the special motions to strike.  (See § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, . . . that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [judgment may be reversed only when, after considering the entire record, "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'"].)

3. *The Trial Court Properly Struck the Cause of Action for Abuse of Process*

a. *Step one:  arising from protected activity*

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed.  [Citations.]  It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.'" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056-1057 (*Rusheen*).)  "To establish a cause of action for abuse of process, a plaintiff must plead two essential elements:  that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.)  As to the second element, there is no abuse of process if the process is used for its proper purpose even though the person uses it for wrongful and malicious motives. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886.)

19

Neufinck's sixth cause of action for abuse of process is based on allegations the Fernandez defendants knowingly filed and thereafter relied on a falsified proof of service to request the entry of Neufinck's default in the unlawful detainer action, to request entry of a default judgment and to request issuance of a writ of possession against Neufinck. All those actions were necessarily undertaken in furtherance of the exercise of the constitutional right of petition, and the cause of action thus arose from protected activity for purposes of the first step of the section 425.16 analysis. (*Booker v. Rountree* (2007) 155 Cal.App.4th 1366, 1370 ["[a]buse of process claims are subject to a special motion to strike"]; see *ValueRock TN Properties, LLC v. PK II Larwin Square SC LP* (2019) 36 Cal.App.5th 1037, 1046 [section 425.16 protection for petitioning activities "includes the filing of lawsuits, and statements and pleadings made in or in preparation for civil litigation"]; see generally *Rusheen*, *supra*, 37 Cal.4th at p. 1065 [trial court properly granted anti-SLAPP motion on an abuse of process claim arising from execution of a default judgment procured through the filing of allegedly false declarations of service].)[9]

---

[9] Emphasizing that William Fernandez, Marcela Fernandez and Melina Byrne contend they had nothing to do with Neufinck's lease and did not act as his landlord or property manager (at most interpreting on occasion for their mother), Neufinck contends, if they did nothing, they could not have engaged in protected petitioning activity. Neufinck's argument, too clever by half, ignores his pleading's verified allegations that each of the defendants individually engaged in the activity at issue in the sixth cause of action and acted in concert with each other in doing so. "[A] defendant who denies engaging in the

20

b. *Step two:  probability of success on the merits*

Civil Code section 47, subdivision (b), establishes an absolute privilege for communications made in a judicial proceeding.  "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'  [Citation.]  The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'"  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241; accord, *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956.)

One purpose of the litigation privilege is "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.'  [Citation.]  Another purpose is to 'promote[] effective judicial proceedings' by

---

alleged conduct 'may rely on the plaintiff's allegations alone' in assessing whether the conduct at issue is protected activity.  [Citation.]  That is because it is '[the] plaintiff's complaint [that] ultimately defines the contours of the claims.'  [Citation.]  Not allowing the defendant to rely on the allegations alone . . . 'would have the perverse effect of making anti-SLAPP relief unavailable when a plaintiff alleges a baseless claim, which is precisely the kind of claim that [the anti-SLAPP law] was intended to address.'"  (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 888.)

encouraging full communication with the courts." (*Jacob B. v. County of Shasta*, *supra*, 40 Cal.4th at p. 955.) "To further these purposes, the privilege has been broadly applied. It is absolute and applies regardless of malice. [Citations.] Indeed, the privilege extends even to civil actions based on perjury. [Citations.] '"The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say."'" (*Id.* at pp. 955-956.)

All the activity targeted by Neufinck as an abuse of process was absolutely privileged under Civil Code section 47, subdivision (b), thereby precluding Neufinck from demonstrating a probability of prevailing on the merits of this claim. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1058 [pleadings and process in an unlawful detainer case are absolutely privileged]; *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 46-51 [demurrer properly sustained to abuse of process cause of action because judgment enforcement efforts taken through the judicial process of a writ of execution, including subsequent act of levying on the writ, were protected by the litigation privilege].) The trial court properly granted the special motions to strike this cause of action.

4. *The Trial Court Erred in Striking the Cause of Action for Violating the RSO*

It is "unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to" the RSO (Los Angeles Mun. Code, § 151.04). A landlord in violation of this provision "shall be liable in a civil action to the person from whom such payment is demanded, accepted or retained" for damages of three times the amount of the excess rent. (Los Angeles Mun. Code, § 151.10, subd. A.) The RSO also

22

requires residential landlords to pay annual interest on tenant security deposits held for at least one year and permits a tenant to bring an action against the landlord to recover unpaid interest "in a court of the appropriate jurisdiction including, but not limited to, small claims court." (Los Angeles Mun. Code, § 151.06.02, subds. B, G.)

The fourth cause of action alleged the Fernandez defendants violated the RSO by proposing unilateral changes to the lease that were effectively rent increases[10] and by failing to pay annual interest on Neufinck's security deposit. Although through boilerplate pleading this cause of action incorporates allegations relating to the unlawful detainer action and other protected petitioning activity, only Fernandez's alleged unprotected activities provide the basis for this claim—proposed changes to the lease that Neufinck characterizes as attempts to take "housing services" away from him without corresponding reductions in rent and the alleged failure to pay interest on Neufinck's security deposit. This conduct (whether action or inaction) was not undertaken in furtherance of the Fernandez

---

[10] The RSO defines a rent increase as "[a]n increase in rent or any reduction in housing services where there is not a corresponding reduction in the amount of rent received." (Los Angeles Mun. Code, §§ 151.01, 151.02.) Neufinck contends Fernandez's notices of changes to the lease's provision permitting him to maintain his pet tortoises and its attorney fee clause constituted reductions in "housing services"—benefits and privileges connected with the occupancy of his rental unit— without corresponding reductions in rent and were, therefore, unlawful rent increases. (Los Angeles Mun. Code, §§ 151.02; 151.04.)

defendants' speech or petitioning rights.[11]  Because the
Fernandez defendants failed to make the required first-step
showing, the special motion to strike the fourth cause of action
should have been denied.

5.  *The Trial Court Erred in Striking the Remaining Causes
    of Action in Their Entirety Rather Than Striking Only
    Those Allegations of Protected Activity Serving as the
    Bases for Relief*

As discussed, in his first amended complaint Neufinck
alleged three general categories of wrongful conduct:
Fernandez's efforts to evict Neufinck including the unlawful
detainer action and the necessary notices preceding it,
purportedly to allow Fernandez to charge a new tenant rent at
the current market rate; Fernandez's unilateral efforts to modify
the terms of Neufinck's lease, characterized as a reduction in
housing services, without a corresponding decrease in his rent;
and Fernandez's unlawful collection of excessive rent due to her
failure to credit him for interest earned by his security deposit.
Neufinck incorporated all three categories of alleged wrongful
conduct into each of his seven causes of action.

The first category—communications in anticipation of an
unlawful detainer action, the lawsuit itself and efforts to enforce
the default judgment—constitutes protected petitioning activity
under section 425.16, subdivision (e).  Filing and prosecuting a
lawsuit and service of required prelitigation notices are core

---

[11]    Neither the trial court nor the Fernandez defendants in
their respondents' brief attempt to explain how the acts that
allegedly violated the RSO constituted protected activity within
the meaning of section 425.16, subdivision (e).

petitioning activities. (See *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 45 ["[a]n unlawful detainer action and service of notices legally required to file an unlawful detainer action are protected activity within the meaning of section 425.16"]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479-1480 ["[s]ervice of a three-day notice to quit was a legally required prerequisite to the filing of the unlawful detainer action"].) Other communications made in expectation of or during the prosecution of the unlawful detainer action, even if not required, are likewise protected activities. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11 [statements made in preparation for or in anticipation of bringing an action that is contemplated in good faith and under serious consideration fall within the ambit of section 425.16]; see also *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 ["statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute"].)

The other two categories of wrongful acts alleged by Neufinck—Fernandez's attempts to modify Neufinck's lease and collection of rent in violation of the RSO—however, are not conduct in furtherance of the exercise of constitutionally protected speech or petitioning activity. (See *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110-111 [cause of action based on allegation of illegal rent increase does not arise from conduct in furtherance of defendant's rights of petition or free speech]; *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 949-951 [causes of action for breach of an agreement and related tortious activity do not arise from protected speech or petitioning activity]; *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308,

1317-1318 [suit by rent control board against landlord alleging illegal rent increase was not subject to special motion to strike].)

Accordingly, we must analyze, as the trial court should have, each of the remaining causes of action and determine which act or set of acts—protected or unprotected—supply a basis for relief before turning to the second step of the section 425.16 analysis and deciding whether Neufinck's claims based on protected activity have the requisite degree of merit to survive the motions. (See *Bonni*, *supra*, 11 Cal.5th at p. 1010; *Baral*, *supra*, 1 Cal.5th at p. 395; see also *Park*, *supra*, 2 Cal.5th at p. 1063 [to determine whether a claim arises from protected activity, we "consider the elements of the challenged claim" and whether the defendant's activities "supply those elements"].)

### a. *Breach of contract*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

Neufinck alleged the Fernandez defendants breached his lease agreement by engaging in a fraudulent scheme to force him to leave and by demanding and collecting monies to which they were not lawfully entitled under the terms of the lease. Either set of acts arguably supports a cause of action for breach of contract. The first category of alleged wrongful conduct involving the attempt to evict Neufinck is protected petitioning activity within the meaning of section 425.16, subdivision (e), and, as held in *Rusheen*, *supra*, 37 Cal.4th at page 1058 (and discussed in connection with Neufinck's abuse of process cause of action), is absolutely privileged under Civil Code section 47, subdivision (b).

26

The motions to strike the first cause of action were properly granted to that extent.

But the second set of allegations does not implicate protected activities. Regardless of Neufinck's likelihood of success,[12] the motions should have been denied insofar as Neufinck alleged the attempts to collect excessive rent or to change the terms of his lease violated the lease agreement.

#### b. *Breach of the implied covenant of good faith*

Every contract contains an implied covenant of good faith and fair dealing that "'neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400.) This implied covenant is "read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'" (*Carma Developers* (*Cal.*), *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373; see *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120 ["the implied covenant will only be recognized to further the contract's purpose"].)

Neufinck asserted his second cause of action as a protective measure, realleging the same grounds as his breach of contract cause of action and seeking damages for breach of the implied covenant "to the extent that . . . any of the wrongs alleged in the First Cause of Action . . . do not constitute a technical breach of

---

[12] The interest arrears totaled less than $18 by 2019. Fernandez declared that in 2016 she had offered to pay Neufinck the interest due on his and his previous cotenant's security deposit, and Neufinck had told her to "pay it later."

any of the plain terms of the contract at issue." Accordingly, the same analysis applies to this cause of action. To the extent predicated on the Fernandez defendants' prelitigation and litigation activities, the second cause of action arises from protected activity that is absolutely privileged under Civil Code section 47, subdivision (b). However, because it is also based on the Fernandez defendants' alleged improper actions in seeking to collect excessive rent or unilaterally modify the terms of the lease, the motions to strike should have been granted only as to the protected allegations in the cause of action.

   c. *Breach of the implied covenant of quiet enjoyment*

  Civil Code section 1927 provides, "An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same." "In recent years, the covenant of quiet enjoyment has been expanded, and in this state, for example, it insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy. [Citations.]' [Citations.] [¶] It is not necessary to show that the landlord acted with the subjective intent to compel the tenant to leave the property or deprive the tenant of quiet enjoyment. [Citation.] There is a 'presumption that a landlord intends the natural and probable consequences of his acts; and where the acts of the landlord effectively deprive the tenant of the use and enjoyment of the premises, the intent to evict is implied from the character of the acts done.'" (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 291-292.)

28

An alleged breach of the covenant of quiet enjoyment that, as here, does not result in a wrongful constructive or actual eviction is a breach of contract. (*Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 250-251; *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 898-902; cf. *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 590 ["a tenant may elect to 'stand upon the lease, remain in possession and sue for breach of contract damages'"].) Like the first two causes of action, Neufinck's additional claim of breach of the lease agreement is predicated on both protected and privileged activity (the use of judicial processes to attempt to evict him) and unprotected activity (the attempted unilateral changes in lease terms, including the prohibition of his keeping his emotional support tortoise) not subject to a special motion to strike. The trial court erred in granting the Fernandez defendants' motions to strike the entire cause of action.

d. *Intentional infliction of emotion distress*

A cause of action for intentional infliction of emotional distress exists when there is """"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."""" [Citations.] A defendant's conduct is 'outrageous' when it is so """"extreme as to exceed all bounds of that usually tolerated in a civilized community."""" [Citation.] And the defendant's conduct must be """"intended to inflict injury or engaged in with the realization that injury will result."""" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) "Whether behavior is extreme and outrageous is a

29

legal determination to be made by the court, in the first instance." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 172; accord, *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 87; *Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44.)

Neufinck's fifth cause of action alleged the Fernandez defendants' outrageous conduct involved "knowingly engaging in a systematic scheme to force Mr. Neufinck to vacate the premises by, among other things, unilaterally attempting to change the terms of the lease not once, but three times; demanding via the 3 day notice that Mr. Neufinck cease parking his vehicle in the location to which he had been assigned and provided by the owner defendants; ignoring Mr. Neufinck's compliance with said 3 day notice; flaunting the statutory regulations governing evictions; demanding money from Mr. Neufinck to which the owner defendants were not lawfully entitled; engaging in unfair and unlawful business practices; and by violating ordinances, regulations, and other laws [capital letters, boldface and underlying omitted]."[13] The alleged outrageous conduct—the so-called systematic scheme—thus involved both protected and unprotected actions.

Once again, to the extent Neufinck alleged the Fernandez defendants' litigation-related activities constituted the intentional infliction of emotional distress, that portion of the claim arises from protected activity; and the actions are absolutely privileged. But the allegations concerning nonprotected activity, including the proposed change in lease

---

[13] In a separate paragraph Neufinck alleged the process server had acted in an outrageous manner by falsifying the proof of service in the unlawful detainer action.

terms that would have prohibited Neufinck from keeping his emotional support tortoise, survive, as does this cause of action. The special motions to strike the fifth cause of action were properly granted only as to the protected aspects of Neufinck's claim.

e. *Violation of the UCL*

The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) Written in the disjunctive, the UCL establishes "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*); accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

The unlawful prong requires a violation of underlying law or a statutory violation. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 [the "unlawful" prong of the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices"].) The fraudulent prong requires a plaintiff to show that "'"members of the public are likely to be deceived"'" by the defendant's practices. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312.) The "unfair" prong authorizes a cause of action if the plaintiff can demonstrate the objectionable act, while not unlawful, is "unfair" within the meaning of the UCL. (*Cel-Tech, supra,* 20 Cal.4th at p. 182.) Outside the commercial context of a plaintiff who claims to have suffered injury from a direct competitor, "a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably

have been avoided by consumers themselves." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1376.)

In his UCL cause of action Neufinck alleged the Fernandez defendants engaged in unlawful and unfair business acts and practices by violating various laws and regulations, including the RSO and Civil Code sections 1927, which codifies the common law rule that a lease agreement contains a covenant of quiet enjoyment, and 1950.5, regulating the treatment of the security deposit made with a rental agreement for residential property. Neufinck additionally alleged that "the entirety" of the Fernandez defendants' "actions, statements and representations, as alleged in this First Amended Complaint, constitute unfair trade practices that have the capacity to deceive consumers and do in fact deceive consumers."

As these allegations demonstrate, Neufinck's UCL cause of action is in large part derivative of his third cause of action for breach of the implied covenant of quiet enjoyment, the fourth cause of action for violation of the RSO and the fifth cause of action for intentional infliction of emotional distress. As discussed, portions of the claims for breach of the covenant of quiet enjoyment and intentional infliction of emotional distress arise from the Fernandez defendants' protected and privileged activity (the prelitigation and litigation activity involving the unlawful detainer action); other aspects of those claims, as well as the cause of action for violation of the RSO, involve unprotected activity. Accordingly, the motions to strike should have been granted only to those portions of the seventh cause of action based on the Fernandez defendants' conduct related to the prosecution of the unlawful detainer action.

## DISPOSITION

The judgment in favor of the Fernandez defendants and the order granting their special motions to strike are reversed. The cause is remanded with directions to the trial court to enter a new order granting the Fernandez defendants' special motions to strike the sixth cause of action for abuse of process, denying the motions directed to the fourth cause of action for violations of the RSO, and granting the motions in part as to the first cause of action for breach of contract, the second cause of action for breach of the implied covenant of good faith and fair dealing, the third cause of action for breach of the covenant of quiet enjoyment, the fifth cause of action for intentional infliction of emotional distress and the seventh cause of action for violation of the UCL to the extent those causes of action are based on protected litigation activity as indicated in this opinion. The parties are to bear their own costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.