Filed 6/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VALUEROCK TN PROPERTIES, LLC, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> PK II LARWIN SQUARE SC LP, et al., <br><br> Defendants and Appellants. | G056634 <br><br> (Super. Ct. No. 30-2016-00878748) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Blackmar, Principe & Schmelter, Gerry C. Schmelter, Peter J. Attarian, Jr., and Timothy D. Principe for Defendants and Appellants.

O'Melveny & Myers, Marc F. Feinstein and Andrew J. Weisberg for Plaintiffs and Respondents.

\*          \*          \*

This is an appeal from an order denying a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute. (See Code Civ. Proc., § 425.16 (§ 425.16).) The case arises from a landlord's repeated refusal to consent to the proposed assignment of a ground lease for the anchor space in a shopping center. The plaintiffs are the entities that wish to assign the leasehold interest and the entities that agreed to take the assignment; the defendants are the landlord and its parent company.

In their original and first amended complaints, the plaintiffs alleged the landlord unreasonably withheld consent to the plaintiffs' lease assignment request. While the litigation was pending, the plaintiffs made an amended lease assignment request, which the landlord similarly rejected. In their second amended complaint, the plaintiffs asserted the same five causes of action as before, but added allegations about the landlord's refusal to consent to their amended assignment request.

The landlord filed an anti-SLAPP motion to strike the second amended complaint, contending the plaintiffs' amended assignment request and the landlord's response to that request were settlement communications and statements made in litigation, and therefore constituted protected activity. The trial court denied the motion, finding the landlord's rejection of the amended assignment request was not a settlement communication or litigation-related conduct, but rather an ordinary business decision. We agree and affirm the order denying the anti-SLAPP motion.

I.

FACTS

The following facts are taken from the pleadings, the declarations, and other evidence submitted on the special motion to strike.

A.      *The Lease*

Defendant PK II Larwin Square SC LP (Larwin) is the owner and landlord of Larwin Square, a community shopping center located in Tustin. Defendant Kimco

2

Realty Corporation (Kimco) is a real estate investment trust that holds an indirect minority interest in Larwin.

From 1978 until 2015, the anchor tenant for the Larwin Square shopping center was a Vons supermarket. Vons entered into a 30-year ground lease for the space in 1977 and later extended the lease term to 2021. The lease prohibited Vons from transferring or assigning the lease without the landlord's prior written consent, but further provided the landlord's "consent shall not be unreasonably withheld."

B.     *The Assignment of the Lease to Haggen*

In 2015, as part of the planned merger between Albertsons and Vons' parent company, and per the divestiture terms imposed by the Federal Trade Commission, many Vons stores — including the Larwin Square store — were sold to Haggen, a small grocery chain in the Northwest.

In anticipation of the merger, Larwin approved the assignment of Vons's Larwin Square lease to Haggen Opco South. In May 2015, Haggen notified Larwin that Vons was instead assigning the lease to a different Haggen entity, plaintiff Haggen Property Holdings III, LLC (HPH III). Larwin did not object to the change. A few months later, without Larwin's knowledge or consent, HPH III "secretly" assigned the lease to plaintiff Haggen Property South, LLC (Propco).

Haggen operated a supermarket in Larwin Square for just a few months, from June to October 2015. The space has been vacant ever since, but Propco has continued to pay rent and other expenses for the premises.

C.     *The First Request for Larwin's Consent to an Assignment to ValueRock*

In February 2016, Propco sold its interest in the ground lease to plaintiff ValueRock Investment Partners, LLC (ValueRock IP), a commercial real estate investment firm. ValueRock IP in turn assigned its rights in the lease to its affiliate, plaintiff ValueRock TN Properties, LLC (ValueRock TN), a special purpose entity created to acquire the lease.

3

In May 2016, Propco asked for Larwin's approval of the assignment to ValueRock. During a preliminary telephone conversation between representatives for Larwin and Propco, Larwin expressed concern that according to its records, HPH III was actually the tenant, Larwin had no record of any transfer to Propco, and the lease required the tenant to request landlord consent before making any assignment. Larwin then sent Propco the May 2015 lease assignment from Vons to HPH III, noted that was "inconsistent" with Propco's claim to be assignee of the lease, and explained the inconsistency was "causing our legal team [to] question if we are dealing with the Tenant here." Despite those concerns, Larwin requested additional information to evaluate the request for consent, such as ValueRock TN's financials, experience, and plans for the premises.

Propco complied in part. It provided general information about ValueRock and its leadership team, but it refused to provide detailed financial information on ValueRock TN because Kimco (Larwin's parent), like ValueRock TN, was also a real estate investor and developer. As for ValueRock's plans for the premises, Propco replied that while nothing in the ground lease required the space to be used as a grocery store, ValueRock's conduct to date showed it was committed to bringing a grocery store to the shopping center.

In June 2016, ValueRock TN sent Larwin a letter demanding consent to the proposed assignment and threatened to sue Larwin for interference with prospective economic advantage. In response, Larwin once again asked for information to help it evaluate the proposed assignment, including the intended use of the premises and financial information on the prospective assignee and any proposed guarantors. After securing a nondisclosure agreement, ValueRock TN sent Larwin its organizational chart and current balance sheet, but it still refused to disclose any concrete plans or intentions for the premises, claiming that "[w]hile a grocery store operator would be the most likely subtenant," it planned to "market the premises to a broad base of prospective retailers."

4

In July 2016, Larwin denied consent to the proposed assignment, citing, among other factors, ValueRock TN's refusal to agree to use the premises as a supermarket, its failure to provide sufficient financial information for Larwin to evaluate its future viability and ability to perform the lease obligations, and the Haggen tenant's default on the lease.  A few weeks later, ValueRock TN asked Larwin to reconsider, and the parties exchanged further communications about the terms of a potential assignment.

In September 2016, Larwin stated it would consent to an assignment on three conditions:  (1) ValueRock TN must prove it or its guarantor has a tangible net worth of at least $10 million; (2) Propco and ValueRock TN must agree the space would be used only as a grocery store and any change in use would require Larwin's consent; and (3) any further assignments or subleases would require Larwin's consent. ValueRock TN responded explaining why it believed those conditions were "unreasonable and therefore invalid."

D.      *The Original and First Amended Complaints*

In October 2016, ValueRock TN, ValueRock IP, and Propco filed a complaint and then a first amended complaint against Larwin and Kimco (collectively, Defendants), alleging Defendants had unreasonably withheld consent to the lease assignment.  The first amended complaint asserted five causes of action:  declaratory relief concerning the parties' rights and obligations under the ground lease, breach of contract (the ground lease), breach of the implied covenant of good faith and fair dealing, intentional interference with contract (the ValueRock-Propco purchase agreement), and intentional interference with prospective economic advantage.

In the months that followed, the parties attempted to mediate the dispute, but those efforts were unsuccessful.

E.      *The Amended Request for Larwin's Consent to an Assignment to ValueRock*

In March 2018, while the litigation was pending, ValueRock TN, ValueRock IP, Propco, and HPH III (collectively, Plaintiffs) again requested Defendants'

5

consent to an assignment of the lease, proposing different terms than before. The terms of their amended request included: (1) a ValueRock entity with a tangible net worth of at least $6 million would guarantee ValueRock TN's lease obligations and provide a certified balance sheet upon request; (2) upon assignment of the lease, ValueRock TN would start a 90-day marketing campaign targeting supermarket or grocery store tenants for the premises, but would not guarantee the subtenant would be a grocery store; and (3) to address Larwin's argument the assignment from HPH III to Propco was ineffective, Propco and HPH III would transfer all their rights in the lease to ValueRock TN.

In the letter communicating this proposal, Plaintiffs unequivocally stated the amended request was "not intended in any way to validate Larwin's previous, unreasonable bases for withholding consent," but instead was "made purely in the interest of securing agreement on the assignment to ValueRock." Plaintiffs further specified the letter was "not a settlement communication and is not intended to release any claims for damages arising from Larwin and Kimco's past refusal to consent to assignment of the Ground Lease."

In response, Defendants insisted Plaintiffs' amended request was "necessarily a settlement communication," and stated they could not "appropriately consider a new request when the old one is still pending and in dispute."

F.    *The Second Amended Complaint*

In April 2018, the parties stipulated Plaintiffs could file a second amended complaint. The second amended complaint alleged the same five causes of action as the first amended complaint, but it added HPH III as a plaintiff and added allegations about Larwin's denial of Plaintiffs' *amended* request for consent. In other words, while the original and first amended complaints were based on Larwin's denial of Plaintiffs' original assignment request in 2016, Plaintiffs based the second amended complaint on Larwin's denial of both the original request in 2016 *and* the amended request in 2018.

6

G.      *The Special Motion to Strike*

In response, Defendants filed an anti-SLAPP special motion to strike the second amended complaint, asserting the new allegations were based on settlement communications[1] and statements made in litigation, which were acts encompassing their right of petition and thus constituted protected activity.  Plaintiffs opposed the motion, asserting the amended request and Defendants' response were simply business communications about the ground lease.

The trial court denied Defendants' motion, explaining Defendants had not shown the allegations arose from an act in furtherance of their right of petition or free speech.  The court acknowledged settlement communications and other statements made in litigation are protected activity under the anti-SLAPP statute, but it concluded the new allegations were based on Defendants' *decisions*, not settlement communications.[2]  It explained it must strike a claim under the anti-SLAPP statute "if the speech *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted," but "the new allegations in the [second amended complaint] point to speech as evidence of a *decision* which is an additional basis for alleged liability, rather than speech as a basis for liability itself."  The court also ruled Defendants' motion was not frivolous and denied the parties' respective requests for fees.  Defendants timely appealed the court's order.

---

[1]      Defendants "declined to produce the parties' previous and subsequent settlement proposals in support of [their] motion" "[t]o preserve the confidentiality of the parties' settlement discussions," but offered to provide copies of the settlement communications for the trial court's review if the court wished to confirm the amended request was indeed a settlement communication.

[2]      At the hearing on the motion, Defendants asked to make an offer of proof that the amended request was in fact part of ongoing settlement negotiations, but the trial court declined the invitation.  The court noted that a court reporter was present and private settlement discussions should not be put on the record.  It also reasoned it did not matter if settlement discussions were the catalyst for the amended request because the settlement discussions were not the gravamen of the new allegations.

## II.

### DISCUSSION

Defendants contend the second amended complaint arises from protected activity under the anti-SLAPP statute because their refusal to consent to the amended assignment request was a settlement communication directly related to the central issue being litigated and because the second amended complaint purports to hold them liable for a position taken in litigation. None of these contentions have merit.

### A.     *The Anti-SLAPP Statute Generally*

In 1992, the Legislature enacted section 425.16 to address "what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) The statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

When a party files a special motion to strike, the trial court must engage in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review a trial court's order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).) We "consider the pleadings, and

8

supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "'However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff[s]."'" (*Flatley, supra,* at p. 326.)

B.      *Principles Guiding Step One of the Anti-SLAPP Analysis*

Under step one of the anti-SLAPP analysis, courts evaluate whether the challenged claims "aris[e] from" protected activity. (§ 425.16, subd. (b)(1).) This necessarily involves determining whether the claims involve conduct within the statutory definition of protected activity (see *id.*, subd. (e)), and if so, whether the challenged claims "*aris[e] from*" that protected activity (see *id.*, subd. (b)(1)).

Section 425.16, subdivision (e), sets forth four categories of protected activity. Relevant here, subdivisions (e)(1) and (e)(2) define protected activity to include any statement made in a judicial proceeding or in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1), (2).)

Protected activity thus includes the filing of lawsuits, and statements and pleadings made in or in preparation for civil litigation. (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 (*Kolar*).) "Settlement discussions made in connection with litigation are [also] protected activity under the anti-SLAPP statute." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 782 (*Crossroads*); see *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 907-908 [settlement offer made to colitigant in underlying action was protected activity and subject to motion to strike in subsequent litigation for alleged intentional interference with contractual relations and negligence].)

Although litigation-related activities constitute protected activity, "it does not follow that *any* claims associated with those activities are subject to the anti-SLAPP statute. To qualify for anti-SLAPP protection, the moving party must [also] demonstrate

9

the claim 'arises from' those activities." (*Kolar*, *supra*, 145 Cal.App.4th at p. 1537, italics added.)

Our Supreme Court recently addressed what "nexus . . . a defendant [must] show between a challenged claim and the defendant's protected activity" to meet the "arising from" requirement. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).) The Court explained: "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid.*) This requires courts to "'distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity.'" (*Id.* at p. 1065.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Id.* at p. 1063.) Courts must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) Courts must also "distinguish between the challenged decisions and the speech that . . . thereafter expresses them." (*Id.* at p. 1067.)

Thus, for a defendant to meet the "arising from" burden, "it is not enough to establish that the action was filed in response to or in retaliation for a party's exercise of the right to petition." (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 804 (*Bergstein*).) Moreover, the fact a cause of action "may have been triggered by protected activity" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cashman*)), or the "fact that protected activity may lurk in the background –and may

explain why the rift between the parties arose in the first place" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478), does not mean the alleged SLAPP *arises from* protected activity.

Instead, "the claim must be *based on* the protected petitioning activity." (*Bergstein, supra,* 236 Cal.App.4th at p. 804; see *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1215.) In evaluating whether that requirement is met, courts consider "the *principal thrust* or *gravamen* of a plaintiff's cause of action" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520) and determine whether the acts underlying that cause of action were acts in furtherance of the right of petition or free speech (*Cashman, supra*, 29 Cal.4th at p. 78).

C.      *Application*

Applying those principles here, we conclude Plaintiffs' claims against Defendants are not based on any conduct in furtherance of Defendants' right of petition or free speech. Instead, the gravamen of Plaintiffs' second amended complaint is Defendants' repeated refusal to consent to the proposed assignment to ValueRock TN.

As noted above, the ground lease prohibits the tenant from transferring or assigning the lease without the landlord's prior written consent, but further provides the landlord's "consent shall not be unreasonably withheld." The principal thrust of the second amended complaint is that Defendants unreasonably withheld consent to Plaintiffs' proposed assignment, first in 2016 when Defendants rejected the original assignment request, and then again in 2018 when Defendants rejected the amended assignment request, causing Plaintiffs to suffer damages. Defendants' decision to withhold consent may have been reasonable under the circumstances; we express no opinion on that issue. We hold only that Plaintiffs' claims are based on Defendants' decision to withhold consent, not on Defendants' litigation conduct or communications, and therefore their claims are not subject to anti-SLAPP protection. Simply put, an alleged breach of a contractual provision prohibiting a landlord from unreasonably

11

refusing to consent to a lease assignment is not protected activity under the anti-SLAPP statute.

Defendants argue the second amended complaint purports to hold them liable for their actions in the litigation, but they overstate the causal nexus between Plaintiffs' allegations in the second amended complaint and the parties' litigation of the first amended complaint. Defendants correctly note the amended request and Defendants' response to that request "relate directly to [the] central issue already in dispute in the litigation," but the second amended complaint does not purport to hold Defendants liable for their conduct in the litigation. To be sure, Defendants withheld consent to the amended assignment request *during* the litigation, which presumably *prompted* the filing of the second amended complaint. But that is not to say the second amended complaint was *based on* Defendants' litigation conduct.[3] (*Bergstein, supra,* 236 Cal.App.4th at p. 804 ["it is not enough to establish that the action was filed in response to or in retaliation for a party's exercise of the right to petition"].)

Relying on *Crossroads, supra,* 13 Cal.App.5th 757,[4] which held that "[s]ettlement discussions made in connection with litigation are protected activity under

---

[3] The parties stipulated in the trial court that the second amended complaint "alleges actions and decisions by Defendants occurring after the filing of the [first amended complaint] concerning the parties' dispute over the proposed assignment of the ground lease at issue." Citing this stipulation, Defendants contend Plaintiffs *admit* the second amended complaint asserts claims against Defendants for their actions in the litigation. We do not read the stipulation that way. To say the second amended complaint arises from Defendants' conduct *after* October 2016 as part of the parties' ongoing dispute about the proposed assignment is not the same as saying the second amended complaint is based on Defendants' litigation activity.

[4] In *Crossroads*, Fannie Mae initiated nonjudicial foreclosure proceedings against property owned by Crossroads, and Crossroads filed for bankruptcy protection.

the anti-SLAPP statute" (*id.* at p. 782), Defendants contend Plaintiffs' amended request was a partial settlement offer, and the second amended complaint thus arises from protected activity:  the parties' settlement negotiations.  We disagree.

Plaintiffs' amended assignment request explicitly stated it was "*not* a settlement communication," and it specified that Larwin's consent to the amended request would not result in the release of Plaintiffs' "claims for damages arising from Larwin and Kimco's *past* refusal to consent to assignment of the Ground Lease."  (Italics added.)  At no point in the amended request did Plaintiffs offer to dismiss their claims or reduce the damages sought for Defendants' refusal to consent to the original assignment request in exchange for Defendants' consent to the amended assignment request. Although acceptance of the amended request may have mooted Plaintiffs' declaratory relief claim on the original assignment request,[5] it would not have resolved Plaintiffs' remaining claims for breach of contract, breach of the implied covenant, intentional interference with contract, or intentional interference with prospective economic advantage, nor would it have eliminated Plaintiffs' demand for damages on those claims. Thus, Defendants' response to Plaintiffs' amended request was not a protected settlement communication as Defendants contend.  Even if we assume the parties' earlier settlement

---

While the bankruptcy stay was in effect, Crossroads requested accountings from Fannie Mae under Civil Code section 2924c to learn the amount required to reinstate or pay off the defaulted loan, and it tendered performance both to reinstate and pay off the loan. Fannie Mae did not respond to the requests for accountings and refused to accept the tenders, and after obtaining relief from the stay, it sold the property.  Crossroads sued Fannie Mae for wrongful foreclosure and other claims, and Fannie Mae filed an anti-SLAPP motion.  The appellate court concluded Crossroads's claims arose from Fannie Mae's constitutionally protected actions — namely, Crossroads's efforts to settle the bankruptcy action — and directed the trial court to grant Fannie Mae's motion.

[5] We are not entirely convinced Defendants' acceptance of the 2018 amended assignment request would have mooted the declaratory relief claim in Plaintiffs' first amended complaint because that claim sought a declaration Larwin had unreasonably withheld its consent to the 2016 *original* assignment request, which presented different terms than the 2018 request.

13

communications or mediation efforts prompted the amended request, it does not follow that the amended request or Defendants' rejection of it constitutes protected speech. (*Cashman*, *supra*, 29 Cal.4th at p. 78 ["That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such"].)

Defendants also contend Plaintiffs drafted their amended assignment request to address defects in their claims that came to light during discovery, and thus Defendants' response was protected activity. The only example Defendants provide to support this argument is that the amended assignment request proposed, among other terms, that Propco and HPH III would transfer all their rights in the lease to ValueRock TN "to address Larwin's unfounded position that the assignment from HPH III to Propco . . . was not effective." Defendants cite this proposed term as evidence the amended request aimed to address Defendants' discovery responses, which stated Propco was not an approved assignee of the lease. But Defendants first alerted Propco of this alleged defect in the chain of assignments in mid-2016, months before Plaintiffs filed their original complaint, when Defendants told Propco that their records showed HPH III was the tenant, they had no record of any transfer to Propco, and the lease required the tenant to request landlord consent before making any assignment. Moreover, even if statements made in the litigation or Defendants' discovery responses influenced or inspired the terms of the amended request, that alone would not trigger the anti-SLAPP statute because Plaintiffs' claims are not based on those statements or responses.

In the end, the pending litigation does not alter Larwin's existing contractual obligation under the lease not to unreasonably withhold consent to a proposed assignment, nor does it alter the parties' business dispute about whether Defendants must consent to the proposed assignment. Defendants are not insulated from liability merely because they again refused consent to the lease assignment while the case was pending. That is not what the Legislature designed the anti-SLAPP statute to accomplish.

14

We therefore conclude Defendants failed to make a threshold showing that Plaintiffs' claims arose from activity protected under the anti-SLAPP statute. Based on this conclusion, we need not address Plaintiffs' likelihood of prevailing under the second prong of the anti-SLAPP analysis. (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 43-44 [court need not discuss second prong if defendant fails to establish lawsuit arises from protected activity].) We thus express no view on the merits of Plaintiffs' claims or of Defendants' defenses.

As for Plaintiffs' request for attorney fees, Defendants' anti-SLAPP motion was not frivolous, nor was their appeal. We therefore deny Plaintiffs' request for fees. (See § 425.16, subd. (c)(1).)

III.

DISPOSITION

The order denying Defendants' anti-SLAPP motion is affirmed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

15