Filed 10/13/23  Williams v. Hillcrest Manor CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BRIAN WILLIAMS, | B319608 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC714309) |
| v. | |
| HILLCREST MANOR LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Brian Williams, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

_____

Brian Williams defaulted in two successive unlawful detainer proceedings initiated by Hillcrest Manor, LLC, the owner of the apartment complex in which he lived.  Representing himself, Williams in July 2018 filed a complaint and in March 2020 the operative first amended complaint for damages, naming Hillcrest Manor and 16 other defendants and purporting to allege 50 causes of action arising from the unlawful detainer actions, including for wrongful eviction, trespass, intentional infliction of emotional distress and deprivation of civil rights in violation of title 42 of the United States Code section 1983.  His prayer for relief requested, in part, $999 million in general economic damages and $999 million in punitive damages.

The trial court granted the special motion to strike filed pursuant to Code of Civil Procedure section 425.16 (section 425.16) by three of the defendants—Vincent Real, a lawyer who represented Hillcrest Manor in the unlawful detainer proceedings; James McCone, a lawyer associated with Real who wrote a letter regarding the proposed settlement of the first unlawful detainer action; and Stephen Friend, a registered process server who served the summons and complaints in the two actions.[1]  We affirm.

---

[1]     Williams's first amended complaint named as defendants Law Offices of Vincent Real, aka Emil Vincent Real, Jr., individually; Emil Vincent Real, Jr. aka Vincent Real, individually and in his official capacity as owner of Law Offices of Vincent Real; James Gorden McCone, aka James G. McCone, individually and in his official capacity as owner of Law Offices of James G. McCone; Law Offices of James G. McCone, aka James Gordon McCone, individually; and Stephen Friend aka Stephen J. Friend, individually, aka Stephen Merrill Friend, individually, and in his official capacity as a California registered

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Unlawful Detainer Proceedings*

As described in declarations and supporting documents filed with the special motion to strike, Real represented Hillcrest Manor in an unlawful detainer action in 2015 based on Williams's nonpayment of rent. After Friend was unable to personally serve Williams, Real requested a court order authorizing service through posting; and Friend posted copies of the summons and complaint on the property and mailed copies to Williams. Williams did not respond within the statutory time, and Real obtained a default judgment on behalf of his client and thereafter a writ of possession, which he delivered to the sheriff's office in Inglewood.

According to Real, he was contacted at this point by Gary Casselman, an attorney representing Williams, who presented an abeyance agreement dated March 27, 2015 signed by Williams and a representative of Hillcrest Manor. The abeyance agreement provided Hillcrest Manor would request a dismissal with prejudice of the unlawful detainer action if Williams paid $2,500 on April 5, 2015 and $2,700 on April 20, 2015 as rent for the period January through April 2015. On April 1, 2015 McCone, Real's associate, wrote Casselman confirming their conversation earlier that day in which McCone said, if both payments were made, "[W]e will recall the writ, set aside the judgment, dismiss the case and restore the tenancy." The payments were made by Williams; but, according to Real, the

---

process server and as owner of Amicus Attorney Service, Inc. The special motion to strike was filed on behalf of all those named defendants. For simplicity, we refer to these defendants only as Real, McCone and Friend.

case could not be dismissed because judgment had been entered. Real explained, "I did, however, cancel all execution on the judgment, which, in the case posture, was the closest I could come to fulfilling my client's part of the abeyance agreement."

A second unlawful detainer action was filed in 2016 for nonpayment of rent. Hillcrest Manor was again represented by Real. Friend personally served Williams on July 21, 2016. Williams did not respond, and Real's office obtained a default judgment in favor of Hillcrest Manor. Williams filed an ex parte application to set aside the judgment. Following a continuance (with a stay of execution of the judgment) and prior to the matter being called, Williams and Real agreed the application to set aside the judgment would be denied, but the lock-out order would be stayed, Williams's security deposit would be returned and Williams would move out. The court was notified of the settlement, which was subsequently carried out by the parties.

2. *Williams's First Amended Complaint*

In his first amended complaint Williams alleged—in what might fairly be described as a nonlinear narrative—that the owner of Hillcrest Manor forcibly broke into his apartment and stole personal property, the decision to seek his eviction was in retaliation for reporting the burglary to the police, Williams's bank records showed he had the money needed to pay any rent due and the process server lied when averring Williams had been properly served with the summons and complaint in the initial unlawful detainer action.[2] Because entry of the improperly

---

[2] Williams failed to include the first amended complaint in his designation of the record on appeal. We augment the record on our own motion to include that document. (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

4

obtained default judgment in the unlawful detainer action is a public record, Williams further alleged, he "has and still is suffering the loss of his reputation, shame, mortification, and hurt feelings all to his general damage."

Specifically as to Real and McCone, Williams alleged the two lawyers agreed to have the initial unlawful detainer case dismissed with prejudice and have the file sealed if Williams complied with the terms of the parties' abeyance agreement. Williams also alleged Casselman spoke to Real on March 16 and 17, 2015 but included no details of their conversation and described a July 18, 2016 phone call from Real to Casselman (relayed to Williams by Casselman) in which Real said Hillcrest Manor's owner would pay Williams $1,000 if he would move out in a week (apparently a reference to the return of Williams's security deposit as part of the settlement of the second unlawful detainer action). Finally, Williams alleged that Real and McCone were hired "as either employees or independent contractors, lawyers, to handle all aspects of any Unlawful Detainer Actions."

As to Friend, Williams alleged the proof of service of the summons and complaint in the first unlawful detainer action, which he reviewed at the Santa Monica courthouse, had been signed by Friend and further alleged the proof of service falsely stated Williams had been personally served on February 24, 2015 when he was conferring with his attorney while in custody at the Twin Towers Correctional Facility. Other than being identified as a defendant in several places in the pleading, no other allegations concern Friend.

Although the caption pages for the first amended complaint list 50 causes of action, Williams failed to state the number and nature of each cause of action in the body of the document and

5

failed to identify as to each separate cause of action the party or parties to whom it was directed, as required by California Rules of Court, rule 2.112. From our own review of the pleading, it is not apparent which causes of action Williams contends apply to Real, McCone or Friend.

3. *The Special Motion To Strike*

Real, McCone and Friend moved to strike the complaint as it related to them, arguing attorneys filing an unlawful detainer lawsuit and a registered process server serving the lawsuits constituted protected petitioning activity within the meaning of section 425.16 and all their conduct as alleged in the first amended complaint was protected by the litigation privilege of Civil Code section 47, subdivision (b)(2).

The motion was supported by declarations from Real, McCone and Friend, which described the two unlawful detainer actions between Williams and Hillcrest Manor. Attached as exhibits were the superior court docket from the initial unlawful detainer action; the complaint, proofs of service and default judgment from the second unlawful detainer action; a conformed copy of the application and order to serve summons by posting, filed February 20, 2015 in the initial unlawful detainer action, from Real's office files; the March 27, 2015 abeyance agreement; emails between Real and Casselman regarding the proposed abeyance agreement; and McCone's April 1, 2015 letter to Casselman regarding the agreement.

Williams filed an opposition, which included declarations from him and Casselman. Williams argued his claims against Real, McCone and Friend did not arise from their protected activity because the underlying unlawful detainer actions did not concern an issue of public interest (it was "personal" and

6

"private").  Because Real, McCone and Friend could not satisfy the first step of the anti-SLAPP analysis, Williams contended, he did not need to demonstrate a probability of prevailing in the litigation.  Although not discussed in Williams's memorandum in opposition to the motion (and not expressly alleged in the first amended complaint), in their supporting declarations Williams and Casselman asserted Hillcrest Manor and its attorneys had breached the abeyance agreement because the 2015 unlawful detainer action had not been dismissed and no satisfaction of judgment had been entered.[3]  The opposition did not address the applicability of the litigation privilege.  Real, McCone and Friend filed a reply in support of the motion.

After hearing oral argument the trial court granted the motion.  The court found Williams's claims arose from Real, McCone and Friend's litigation activities and, as such, constituted protected activity within the meaning of section 425.16.  It also found all of the alleged misconduct was protected by the litigation privilege:  "[T]he litigation privilege forecloses any showing of a probability of success on the merits by Plaintiff because Moving Defendants' alleged conduct was either made in furtherance of the unlawful detainer actions, which are judicial proceedings, in relation to, or done in good faith and under serious consideration of litigation prior to the initiation of the unlawful detainer actions as alleged in the [first amended complaint].  [Citations.]  The [first amended complaint] does not allege that Moving Defendants engaged in any other conduct that

_____

[3]    Neither declaration suggests a legal basis for asserting a contract claim against Hillcrest Manor's attorneys for breach of the abeyance agreement between Williams and Hillcrest Manor.

7

did not have some connection or logical relation to the unlawful detainer actions."

Williams filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claims"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing

8

made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a now familiar two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063; accord, *Bonni, supra*, 11 Cal.5th at p. 1009.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884; see *Bonni*, at p. 1012; *Park*, at p. 1060.)

"As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Sweetwater Union High School*

9

*Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; accord, *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "'We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'" (*Monster Energy*, at p. 788; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [the court should grant the section 425.16 motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim'"].)

We review de novo an order granting or denying a special motion to strike under section 425.16 (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250; *Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 884), considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated. (§ 425.16, subd. (b)(2).)

2. *Any Claims Against Real, McCone and Friend Arise from Protected Petitioning Activity*

The litigation-related activities of an attorney and the attorney's agents, including, as pertinent here, the filing and prosecution of a civil action on behalf of a client, generally constitute acts in furtherance of a person's constitutional right of petition. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [An act in furtherance of the person's right of petition or free speech "includes communicative conduct such as the filing, funding, and

10

prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation"]; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113, 226 ["[i]t is well established that the protection of the anti-SLAPP statute extends to lawyers and law firms engaged in litigation-related activity"]; see also *ValueRock TN Properties, LLC v. PK II Larwin Square SC LP* (2019) 36 Cal.App.5th 1037, 1046 [section 425.16 protection for petitioning activities "includes the filing of lawsuits, and the statements and pleadings made in or in preparation for civil litigation"].)

In his brief in this court Williams does not dispute that, whichever of his 50 causes of action he may have asserted against Real, McCone or Friend, each arises from Real's role as litigation counsel for Hillcrest Manor in the two unlawful detainer actions, McCone's limited participation as Real's associate in settlement discussions resolving the initial unlawful detainer action or Friend's submission of a proof of service (allegedly false) in the initial action. And he does not contend that litigation-related conduct is not properly classified as constitutionally protected petitioning activity. Rather, his sole challenge to the trial court's step-one analysis is his argument, based on a misunderstanding of the general language in section 425.26, subdivision (b)(1), that to come within the protection of section 425.16 petitioning activity must be "in connection with a public issue." Here, Williams argues, the issue was purely private—a simple landlord-tenant disagreement.

As discussed, however, section 425.16, subdivision (e)(1), defines as a matter of public interest any written or oral statement or writing made in a judicial proceeding and

11

subdivision (e)(2) similarly defines as a matter of public interest any written or oral statement or writing made in connection with an issue under consideration or review by a judicial body.  The acts upon which Williams's complaint is based (Real's court filings, McCone's settlement letter during the pendency of the first unlawful detainer case and Friend's signed proof of service filed with the court) all fall squarely within those definitions, whether the unlawful detainer action was private and personal or a matter of widespread public interest.  (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479 ["'[t]he prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16'"]; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [same]; see *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966 [attempt to serve process constitutes protected petitioning activity within section 425.16].)

    3.  *Williams Failed To Demonstrate a Probability of Prevailing on Claims Against Real, McCone and Friend*

Civil Code section 47, subdivision (b)(2), creates an absolute privilege for litigation-related communications:[4]  "'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution.  [Citations.]  Further, it applies to any publication required or permitted by law in the course of a

---

[4]    Civil Code section 47 provides in part:  "A privileged publication or broadcast is one made:  [¶] . . . [¶]  (b)  In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.  [Citations.]  [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  [Citations.]' [Citation.]  Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation].  It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1057; see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 ["'[t]he principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions'"]; *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006.)

Moreover, "'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation." (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 921; accord, *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920; see *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956 ["the privilege extends even to civil actions based on perjury"]; *Kenne v. Stennis*, *supra*, 230 Cal.App.4th at p. 965

["'[t]he litigation privilege has been applied in "numerous cases" involving "fraudulent communications or perjured testimony"'"].)

As the trial court ruled, all the conduct of Real, McCone and Friend alleged by Williams falls well within the scope of the litigation privilege: Real's filing and Friend's service of the unlawful detainer actions (see *Feldman v. 1100 Park Lane Associates*, *supra*, 160 Cal.App.4th at pp. 1486, 1488 ["Park Lane's filing of the unlawful detainer action clearly fell within the litigation privilege"; "the litigation privilege applied to the service of the notice to quit in this case"]), and Real's and McCone's settlement discussions with Casselman or Williams himself (see *Mancini & Associates v. Schwetz* (2019) 39 Cal.App.5th 656, 661 [litigation privilege "applies to statements made during settlement negotiations"].) (See also *Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at pp. 1249-1250 [litigation privilege preempted provisions of a city's tenant harassment ordinance that authorized civil and criminal penalties for bringing an action to recover possession of a rental unit without a reasonable factual or legal basis]; *Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1057 [litigation privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards"]; *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134 [litigation privilege applies to postjudgment enforcement efforts].)

In his briefing in this court, Williams asserts in conclusory fashion that he established a probability of prevailing on the various causes of action at issue in the special motion to strike—an argument made without identifying the evidence purportedly submitted in the trial court to support any of his allegations of

14

tortious conduct.  But Williams does not address (or even cite) the litigation privilege, let alone explain why the privilege does not constitute an absolute defense to his claims against Real, McCone and Friend.  On the record before us, it would be impossible for Williams to avoid application of the litigation privilege.

4. *Williams Was Not Entitled to Leave To Amend*

Williams final argument that the trial court should have granted him leave to amend his complaint if necessary to establish the requisite probability of prevailing on the merits of his claims against Real, McCone and Friend misreads governing law.  A plaintiff like Williams who unsuccessfully responded to a special motion to strike may not be given leave to amend his or her complaint.  As stated more than two decades ago in *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073, "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the [first step] showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.  Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading.  This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend."  (Accord, *Finato v. Keith A. Fink & Associates* (2021) 68 Cal.App.5th 136, 149; *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 626; *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1005; see *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676 ["[t]here is no such thing as granting an anti-SLAPP motion with leave to amend"].)

15

To be sure, the court of appeal in *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, a case indirectly relied upon by Williams,[5] affirmed the trial court's order allowing the plaintiff to amend her complaint to allege actual malice when her evidentiary showing in response to a special motion to strike demonstrated the requisite probability of prevailing on the merits of a defamation claim that required proof of actual malice. The court reasoned that the policy concerns against amendment in the anti-SLAPP context did not apply because the plaintiff's suit—shown to be likely meritorious—was not a strategic lawsuit against public participation, albeit one that lacked a necessary allegation. (*Id.* at p. 863.) Nonetheless, the court pointed out that the trial court's order granting plaintiff leave to amend effectively denied the special motion to strike. (*Id.* at p. 874; see *Martin v. Inland Empire Utilities Agency*, *supra*, 198 Cal.App.4th at p. 629 ["an order granting an anti-SLAPP motion with leave to amend is the functional equivalent of an order denying the motion"].) That is a far cry from the case at bar, where Williams made no showing in the trial court of a probability of prevailing on the merits of his claims against Real, McCone and Friend. To the contrary, as discussed, the litigation privilege absolutely barred his claims against the three moving parties.

---

[5]     Williams quotes the court of appeal's discussion of *Nguyen-Lam v. Cao, supra*, 171 Cal.App.4th 858 in *Martin v. Inland Empire Utilities Agency, supra,* 198 Cal.App.4th at page 627.

16

## DISPOSITION

The order granting the special motion to strike is affirmed. Real, McCone and Friend are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.

MARTINEZ, J.

17