Filed 11/18/24  County of Riverside v. JAGS Care CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| COUNTY OF RIVERSIDE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAGS CARE,<br><br>    Defendant and Appellant. | D084310<br><br><br>(Super. Ct. No. UDBL2300038) |

APPEAL from an order of the Superior Court of Riverside County, Arthur C. Hester III, Commissioner.  Affirmed.

Allen Matkins Leck Gamble Mallory & Natsis, Ryan T. Waggoner and Shauna E. Woods for Defendant and Appellant.

Office of County Counsel, County of Riverside, Minh C. Tran and G. Ross Trindle III for Plaintiff and Respondent.


JAGS Care appeals the order denying its special motion to strike as a strategic lawsuit against public participation (SLAPP) the complaint filed by the County of Riverside (the County) in an unlawful detainer action.  We conclude the complaint is not subject to such a motion because it does not

arise from any speech or petitioning activity protected by the anti-SLAPP statute. We therefore affirm.

BACKGROUND

Beginning in 2001, JAGS Care and its predecessor in interest leased premises owned by the County on which they operated a fueling station, convenience store, and truck stop. After their initial lease expired, the parties executed a temporary lease with an expiration date of April 30, 2022. The temporary lease allowed either party "to terminate [it] without cause and by providing sixty (60) days written notice of such intent to terminate to the other [p]arty." The temporary lease recited it was "an interim agreement, while the [p]arties negotiate a long term lease." Multiple attempts to negotiate a long-term lease were unsuccessful. JAGS Care did not vacate the premises on April 30, 2022.

In April 2022, the County issued a request for proposal for a long-term lease of the premises. It received two responses, one from JAGS Care and the other from Jagtar Samra. Samra made a higher bid and was awarded the lease in July 2022. The County rejected JAGS Care's protest of the decision to award the lease to Samra.

In September 2022, the County notified JAGS Care it would recommend the County Board of Supervisors issue a 60-day notice of termination of JAGS Care's tenancy. At the November 29, 2022 hearing on the recommendation, representatives of JAGS Care appeared and urged the Board to reject the recommendation. One representative asserted that terminating the temporary lease would send a message that "the County values blanket conditional promises from bidders over family businesses like [JAGS Care that] have a real and established history here in this community," and that "[i]f the Board moves forward today" JAGS Care would

2

"have no other choice . . . but to seek legal action." The Board, by a four-to-one vote, adopted the recommendation to terminate JAGS Care's tenancy. The County served a 60-day notice of termination on JAGS Care later that day.

JAGS Care submitted a claim for damages to the County under the Government Claims Act (Gov. Code, § 810 et seq.) on December 9, 2022. The County rejected the claim four days later.

In January 2023, JAGS Care filed a civil action against the County. The record on appeal does not include a copy of the complaint filed in the action, but it does include an order filed in the action that describes the complaint. The order states that JAGS Care alleges it had a lease with the County that was set to expire in June 2020, and the County said it would renew the lease "if [JAGS Care] spent millions of dollars repairing and improving the property. [JAGS Care] alleges that it agreed to this proposal and a contract was formed. It asserts that despite this agreement, [the County] solicited bids through a request for proposal process and did not select [JAGS Care] despite the agreement and the $1.3 million spent . . . to improve the property." The order further states the "complaint asserts the following cause of action: (1) writ of mandate pursuant to CCP § 1085, (2) breach of contract, and (3) declaratory and injunctive relief."

In April 2023, the County filed an unlawful detainer action against JAGS Care for remaining on the premises without the County's consent after expiration of the 60-day notice of termination of tenancy. The complaint contains several paragraphs describing events that preceded termination of the tenancy, including one stating that representatives of JAGS Care "appeared at the Board [of Supervisors] meeting on November 29, 2022[,] and provided comments before the [Board] voted on the motion to approve the 60-

day Notice of Termination of Tenancy." The County sought a judgment awarding it possession of the premises and holdover damages.

JAGS Care responded with a special motion to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16). It argued the County filed the unlawful detainer action to retaliate against it for exercising constitutionally protected rights of free speech and petition when its representatives spoke at the November 29, 2022 hearing on the recommendation to issue the 60-day notice of termination of tenancy and when it filed the civil action against the County. JAGS Care further argued the County could not show a probability of prevailing in the unlawful detainer action, because it did not properly serve a valid notice to quit before filing the complaint and reinstated the lease by accepting rent. In support of the motion, JAGS Care submitted several declarations with attached exhibits (including the temporary lease and a transcript of the November 29, 2022 hearing before the Board of Supervisors) and a request for judicial notice of documents filed in its civil action against the County.

The County opposed the motion. It argued that although the unlawful detainer action was filed after JAGS Care's representatives made their comments at the November 29, 2022 hearing before the Board of Supervisors and JAGS Care filed the civil action against the County, the unlawful detainer action did not arise from the comments or the filing. The County further argued it was likely to prevail in the unlawful detainer action. With its opposition, the County submitted a request for judicial notice of several documents filed in JAGS Care's civil action and the minutes of the meeting at which the Board of Supervisors voted to issue the 60-day notice of termination of tenancy.

4

The trial court held a hearing and denied the anti-SLAPP motion. The court ruled JAGS Care had not shown the unlawful detainer action arose from free speech or petitioning activity protected by the anti-SLAPP statute, and the County had shown a probability of prevailing in the action.

DISCUSSION

JAGS Care contends the trial court erroneously denied its anti-SLAPP motion. It argues it met its burden to show the unlawful detainer action arises from protected speech and petitioning activity, because the timeline of events shows the County filed the action to retaliate against it for statements its representatives made at the hearing at which the Board of Supervisors voted to terminate the temporary lease and for its prosecution of the "administrative appeal" and civil action against the County.[1] JAGS Care also argued the County failed to show a probability of prevailing in the unlawful detainer action, because the County did not serve a valid notice to quit before commencing the action, did not comply with the notice provisions of the temporary lease, and reinstated the temporary lease by accepting rent after the expiration date. JAGS Care asks us to reverse the challenged order and to remand the matter with direction to the trial court to enter a new order granting the anti-SLAPP motion, to enter a judgment of dismissal, and to determine the amount of recoverable attorney fees and costs.

Litigation of a special motion to strike under the anti-SLAPP statute involves a two-step process. At the first step, the defendant has the burden

[1]    JAGS Care's record citations concerning the "administrative appeal" are to its letter protesting the County's decision to award the long-term lease to Samra, its claim under the Government Claims Act, and the County's notice of rejection of the claim. It appears that what JAGS Care calls the "administrative appeal" is its attempts to exhaust administrative remedies before filing the civil action. JAGS Care does not separately analyze the "administrative appeal" and the civil action, and neither shall we.

5

to show the claim it challenges "aris[es] from" one of the categories of speech or petitioning activity listed in the statute. (Code Civ. Proc., § 425.16, subds. (b)(1), (e); see *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) If the defendant meets that burden, the court proceeds to the second step, where the burden shifts to the plaintiff to establish a probability of prevailing on the claim. (Code Civ. Proc., § 425.16, subd. (b)(1); *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) In deciding whether the plaintiff has met that burden, the court does not weigh the evidence or resolve any conflicts in the evidence; it determines only whether the plaintiff's evidence, if accepted as true, would suffice to sustain a judgment for the plaintiff. (*Baral*, at pp. 384–385.) If it would, the claim may proceed. (*Id.* at p. 385.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) We review an order granting or denying an anti-SLAPP motion de novo by using the same two-step process the trial court used. (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962; *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282.)

As the moving party, JAGS Care had the initial burden to show the County's unlawful detainer action "ar[ose] from any act of [JAGS Care] in furtherance of [its] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) Such acts include written or oral statements made: (1) in a legislative, executive, judicial, or other official proceeding; or (2) in connection with an issue under consideration by a legislative, executive, judicial, or other official body. (*Id.*, subd. (e).) The parties agree the statements JAGS Care's representatives made at the Board

6

of Supervisors hearing on November 29, 2022, and the statements JAGS Care made in the civil action against the County qualify as activities protected by the anti-SLAPP statute. (See *Navellier, supra*, 29 Cal.4th at p. 90 [constitutional right of petition includes filing litigation]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115, 1118 [statements made in anticipation of lawsuit or other official proceeding are protected by anti-SLAPP statute, which "broadly encompasses participation in official proceedings"].) The issue in dispute is whether the County's unlawful detainer action "aris[es] from" those statements. (Code Civ. Proc., § 425.16, subd. (b)(1).) As we shall explain, it does not.

In deciding whether a cause of action arises from protected activity, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra*, 29 Cal.4th at p. 89.) The court "should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*).) To establish its claim, the County must prove JAGS Care remained in possession of the premises it had leased from the County after expiration of the period specified in the notice of termination of tenancy and without the County's consent. (See Code Civ. Proc., § 1161, subd. 1; *Hignell v. Gebala* (1949) 90 Cal.App.2d 61, 66–69.) The only action by JAGS Care that supplies an element of the County's claim for unlawful detainer is JAGS Care's continued possession of the premises after expiration of the 60 days the County had given JAGS Care to vacate the premises in the notice of termination of tenancy. The act of holding over after the tenancy had been terminated is not an act "in furtherance of [JAGS Care's] right of petition or free speech" under

7

the federal or state Constitution.  (Code Civ. Proc., § 425.16, subd. (b)(1); cf. *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 161 (*Marlin*) [terminating tenancy is not act taken in furtherance of right of petition or free speech].)  It is an alleged breach of the term of the temporary lease that allowed the County to terminate the tenancy upon 60 days' notice.  "The simple breach of contract alleged in the instant case does not arise from [any] constitutionally protected activity."  (*Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1118; see *ValueRock TN Properties, LLC v. PK II Larwin Square SC LP* (2019) 36 Cal.App.5th 1037, 1048 (*ValueRock*) [alleged breach of lease provision prohibiting landlord from unreasonably refusing to consent to lease assignment is not protected activity under anti-SLAPP statute].)

In opposition to this conclusion, JAGS Care contends the "timeline of events" shows the County's unlawful detainer action does not arise from JAGS Care's possession of the leased premises, but instead was filed in retaliation for JAGS Care's commencement of the civil action against the County and participation in the Board of Supervisors hearing at which a JAGS Care representative threatened to sue the County.  In advancing this argument, JAGS Care "ha[s] fallen victim to the logical fallacy *post hoc ergo propter hoc*—because [its protected activities] preceded [the County's] complaint the [protected activities] must have caused [the] complaint."  (*Marlin, supra*, 154 Cal.App.4th at p. 160.)  "[F]or a tenant to bring a proper special motion to strike an unlawful detainer complaint, it is insufficient simply to show that the unlawful detainer complaint was filed *after* the lessee's complaint against the lessor."  (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1176.)  "[T]he mere fact that an action was filed after protected activity took place does not mean the

8

action arose from that activity for the purposes of the anti-SLAPP statute."
(*Navellier, supra*, 29 Cal.4th at p. 89.)  For JAGS Care "to meet the 'arising
from' burden, 'it is [also] not enough to establish that the action was filed in
response to or in retaliation for a party's exercise of the right to petition.' "
(*ValueRock, supra*, 36 Cal.App.5th at p. 1047.)  Rather, it must show that its
protected "speech or petitioning activity *itself* is the wrong complained of" by
the County.  (*Park, supra*, 2 Cal.5th at p. 1060.)  As we have explained, the
wrong of which the County complains is JAGS Care's continued possession of
the premises after termination of the tenancy, which is not an activity
protected by the anti-SLAPP statute.

JAGS Care argues it is "significant" that the County included in the
complaint in the unlawful detainer action a paragraph stating that
representatives of JAGS Care "appeared" and "provided comment" at the
hearing at which the Board of Supervisors voted to terminate the temporary
lease.  JAGS Care asserts that paragraph was "an apparent effort to lend
legitimacy to the presentation made by the County at the public hearing that
discussed the [request for proposal] process leading to the decision to
terminate [JAGS Care's] [l]ease—a presentation that was misleading in
multiple respects."  JAGS Care goes on to describe three ways in which it
alleges the County's presentation to the Board was misleading, and then
concludes, without analysis or citation to authority, that the County's
complaint "arises from [JAGS Care's] participation in the quasi-judicial
hearing."  We are not persuaded.

For purposes of an anti-SLAPP motion, there is an important difference
between allegations that supply the elements of a claim and those that
provide background information.  "Allegations of protected activity that
merely provide context, without supporting a claim for recovery, cannot be

9

stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.) The paragraph of the complaint in the unlawful detainer action about JAGS Care's representatives' participation in the November 29, 2022 hearing before the Board of Supervisors is "incidental background," because it is merely one of several paragraphs describing the events that preceded the Board's decision to terminate the temporary lease between the County and JAGS Care. (*Bonni, supra*, 11 Cal.5th at p. 1012.) The paragraph does not "supply the elements of a claim," because it does not describe any conduct the County alleges caused its injury. (*Ibid.*) The inclusion of that paragraph does not subject the complaint to a special motion to strike. (*Baral*, at p. 394; *Durkin v. City and County of San Francisco* (2023) 90 Cal.App.5th 643, 653.)

In sum, we conclude that because JAGS Care did not meet its burden to show the unlawful detainer action "aris[es] from" constitutionally protected speech or petitioning activity (Code Civ. Proc., § 425.16, subd. (b)(1)), the trial court correctly denied the anti-SLAPP motion (*Mary's Kitchen v. City of Orange* (2023) 96 Cal.App.5th 1009, 1018; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275). The burden never shifted to the County to show a probability of prevailing in the unlawful detainer action, and we thus need not, and do not, consider the parties' competing contentions on that issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81; *White v. Davis* (2023) 87 Cal.App.5th 270, 290; *Hylton*, at p. 1275.)

## DISPOSITION

The order denying the special motion to strike is affirmed.  Respondent shall recover its costs on appeal.

IRION, Acting P. J.

WE CONCUR:

KELETY, J.

RUBIN, J.