Filed 11/15/24  Infinity Insurance Company v. Wright CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| INFINITY INSURANCE COMPANY, | B325506 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21CHCV00922) |
| v. | |
| RODNEY DESHONE WRIGHT et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Reversed.

Law Office of Wayne McClean, Wayne McClean and Marley McClean; Parris Law Firm and Jason P. Fowler for Defendant and Appellant Rodney Deshone Wright.

Parris Law Firm and Daniel Eli for Defendants and Appellants Kent and Sherrill Hubbard.

Sheppard, Mullin, Richter & Hampton, Charles A. Danaher, Todd E. Lundell and Theona Zhordania for Plaintiff and Respondent.

## INTRODUCTION

Appellant Rodney Deshone Wright (Wright) was involved in an automobile accident that resulted in the deaths of two brothers. The brothers' parents, appellants Kent and Sherrill Hubbard (the Hubbards), filed suit against Wright. At the time of the accident, Wright and his vehicle were insured by respondent Infinity Insurance Company (Infinity).

This action stems from a dispute between the parties regarding Infinity's liability for the multi-million-dollar judgment the Hubbards obtained against Wright in their lawsuit. Infinity filed an action for declaratory relief against Wright and the Hubbards, seeking a judicial determination that it was not obligated to satisfy the Hubbards' judgment. Wright and the Hubbards filed cross-complaints against Infinity, alleging Infinity's mishandling of Wright's defense caused it to unreasonably reject the Hubbards' settlement proposals. In response, Infinity brought a special motion to strike identical portions of both cross-complaints under our anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[1] The trial court granted the motion, and subsequently awarded Infinity its attorney's fees and costs incurred in bringing the motion to strike.

Wright and the Hubbards appeal the orders granting Infinity's anti-SLAPP motion and awarding Infinity its attorney's fees and costs. We hold the challenged cross-claims do not fall within the scope of the anti-SLAPP statute and reverse both orders.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.      *Infinity's Complaint*

On December 6, 2021, Infinity filed a complaint against Wright and the Hubbards, alleging a single cause of action for declaratory relief.  The complaint alleged that Infinity issued an automobile policy to Wright that provided liability coverage with limits of $15,000 per person and $30,000 per accident.  On January 21, 2027, while the policy was in effect, Wright was involved in an automobile accident that resulted in the deaths of the Hubbards' children as well as injuries to Nikolaos Linaritakis (Linaritakis).  Infinity claimed Wright caused the accident by driving the wrong way on the interstate while under the influence of alcohol.  Infinity received a settlement demand from the Hubbards after the accident.  In response, Infinity tendered the full $30,000 policy limit to the Hubbards and Linaritakis to settle their respective claims stemming from the accident with Wright.  The Hubbards and Linaritakis did not agree on how to divide the $30,000 tendered by Infinity.

The Hubbards and Linaritakis filed separate suits against Wright.  At Wright's request, Infinity settled Linaritakis' case for $8,000.  The Hubbards' case went to trial.  The Hubbards prevailed at trial, with the jury awarding $10.6 million in damages against Wright.  Infinity claimed that Wright and the Hubbards took the position that Infinity was required to satisfy the entire judgment against Wright because it unreasonably rejected the Hubbards' settlement proposals.

Infinity's cause of action for declaratory relief sought a judicial determination that Infinity had no obligation to contribute to the judgment beyond the remaining $22,000 policy limit.  Infinity also sought a declaration

3

that it did not act unreasonably or in bad faith in responding to the Hubbards' settlement demands.

II.    *Cross-Complaints*

On February 1, 2022, Wright filed a cross-complaint against Infinity alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing.  Wright alleged the Hubbards repeatedly offered to settle their claim against him for $24,000.  Infinity refused to settle with the Hubbards unless it was also able to reach a global settlement that included Linaritakis' claims.  However, Infinity later settled with Linaritakis individually "without securing a release from the Hubbards."  When the Hubbards were unable to settle, they filed a complaint against Wright.

During their litigation against Wright, the Hubbards proposed an agreement under which a stipulated judgment would be entered against Wright in exchange for an assignment of Wright's rights against Infinity. This agreement was conditioned on Infinity's consent to the entry of the stipulated judgment against Wright.  The parties were ultimately unable to reach an agreement on the amount of the stipulated judgment.  The Hubbards proposed a stipulated judgment totaling $6 million.  Infinity rejected this proposal, stating that $6 million exceeded even the worst-case scenario for the jury's potential verdict.

As the parties were unable to reach an agreement on the stipulated judgment proposal, the case proceeded to trial. The jury awarded the Hubbards $10.6 million in compensatory damages.  The trial court subsequently awarded the Hubbards an additional $1.8 million in prejudgment interest, totaling a judgment of over $12.4 million against Wright.

4

Wright alleged that Infinity unreasonably refused to accept the Hubbards' settlement demands or stipulated judgment proposal. Wright also claimed that Infinity was aware that the value of the Hubbards' claim against Wright exceeded $6 million and that its retained counsel undervalued the Hubbards' claim.

Wright's cross-complaint alleged Infinity breached the implied covenant of good faith and fair dealing in numerous ways. As relevant here, Wright alleged Infinity breached the covenant by rejecting the stipulated judgment proposal, misevaluating the value of the Hubbards' case, and relying on the recommendations of incompetent counsel. Wright's cause of action for breach of contract alleged Infinity breached the terms of his policy by rejecting a reasonable settlement demand within the policy limits and by retaining incompetent counsel to defend him in the Hubbards' lawsuit.

On February 2, 2022, the Hubbards filed their own cross-complaint against Infinity asserting a single cause of action for declaratory relief. The allegations of the Hubbards' cross-complaint were nearly identical to those asserted in Wright's cross-complaint. The Hubbards' cross-complaint sought a judicial declaration that Infinity breached the implied covenant of good faith and fair dealing that it owed to Wright and was therefore liable to pay the judgment entered against Wright in the Hubbards' prior lawsuit against him. The Hubbards' alleged breaches mirror those alleged in Wright's cross-complaint.

III.  *Anti-SLAPP Motion to Strike*

In response, Infinity filed an anti-SLAPP motion to strike identical allegations in both cross-complaints concerning Infinity's rejection of the Hubbards' stipulated judgment proposal. Specifically, Infinity sought to

5

strike paragraphs 23 through 28, 33, and 39(d) through 39(f) in their entirety, along with portions of paragraphs 31, 32, and 39(g) from both cross-complaints.

Infinity's motion did not seek to strike any claims relating to the Hubbards' initial settlement demands within the policy limits. Instead, Infinity only challenged the claim that it breached the implied covenant of good faith and fair dealing in connection with the proposed stipulated judgment. Infinity argued the claims relating to the stipulated judgment arose from protected activity, namely settlement discussions it had with Wright and the Hubbards in the underlying action. Infinity claimed the Hubbards and Wright were "suing Infinity because it exercised its right to litigate the issue of damages rather than terminate the litigation by stipulating to a consent judgment [for] $6 million." Infinity argued Wright and the Hubbards could not establish a probability of success on their claims because an insurer has no obligation to accept a settlement offer over the policy limits.

The Hubbards and Wright filed a joint opposition to Infinity's motion. They argued Infinity had not shown the challenged cross-claims arose from protected activity and claimed they could establish a probability of success on the merits of their challenged cross-claims.

On November 4, 2022, the trial court granted Infinity's motion. The trial court noted that it was obligated to draw a careful distinction between claims based squarely on protected communications and claims based on an underlying course of conduct evidenced by such communications. Turning to the specific allegations of the cross-complaints, the trial court determined that Infinity's asserted protected activity during settlement negotiations "constitute[d] the means for demonstrating the allegedly wrongful conduct."

6

However, the trial court concluded the protected settlement discussions were "inseparable" from the other factual allegations underpinning the challenged cross-claims. The court deemed Infinity had therefore satisfied its burden under prong one. Proceeding to the second prong, the trial court found Wright and the Hubbards could not establish a probability of success as no legal authority allowed the court to "extend[] bad faith liability against an insurer for refusing to pay [more than] the policy limit."

## IV. *Infinity's Motion for Attorney's Fees*

After it prevailed on the anti-SLAPP motion, Infinity filed a motion to recover its attorney's fees and costs under section 425.16, subdivision (c). The trial court granted the order on May 8, 2023, awarding Infinity $79,250 in attorney's fees and costs it incurred in connection with the special motion to strike.

## V. *Appeal*

Wright and the Hubbards timely appealed the trial court's orders granting Infinity's anti-SLAPP motion and awarding Infinity attorney's fees and costs. The appeals were consolidated by order of this court on May 8, 2024.

## DISCUSSION

## I. *Anti-SLAPP Procedure*

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) A "cause of action against a person

arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion to strike, courts conduct a two-step analysis. First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

We review the trial court's order denying the anti-SLAPP motion de novo, applying the same two-step analysis. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

II.    *Prong One: Arising from Protected Activity*

At the first step of the anti-SLAPP analysis, "the moving party must establish both (1) that its act constituted protected activity; and (2) the opposing party's cause of action arose from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130; *Wilson, supra,* 7 Cal.5th at p. 887.) "At this stage, the

8

question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Wilson*, at p. 888.) We begin our analysis with a determination of whether Infinity has satisfied this two-part burden under prong one.

### A. *Protected Activity*
#### 1. *Legal Standards*

By statute, the anti-SLAPP procedure protects "any act" taken by a defendant "in furtherance of the person's right of petition or free speech." (§ 425.16, subd. (b)(1).) Subdivision (e) provides a four-part definition of what constitutes an "act" under subdivision (b)(1). To satisfy the initial showing on prong one, the moving party must establish its actions fall within one of the four categories enumerated in subdivision (e). (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 (*Equilon*).) Infinity alleges it has met this burden because the challenged portions of the cross-complaints fall within the first two clauses of section 425.16, subdivision (e). The clauses define protected activity to include "(1) any written or oral statement or writing made before a . . . judicial proceeding, or . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e).)

"[C]ourts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.] "'Under the plain language of section 425.16, subdivisions (e)(1) and (2), as well as the case law interpreting those provisions, *all* communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."' [Citation.]" (*Optional Capital, Inc. v.*

9

*Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113 (*Optional*).) "[B]ecause settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2)." (*Id*. at p. 114.) "The protection of the anti-SLAPP statute applies 'even against allegations of fraudulent promises made during the settlement process.' [Citation.]" (*Ibid*.)

### 2. *Allegations of Protected Activity*

At the first step of the prong one analysis, Infinity only has to show the challenged cross-claims contain allegations of protected activity. The allegations concerning the stipulated judgment proposal describe Infinity's actions and statements during settlement negotiations with Wright and the Hubbards. Communications made during settlement negotiations constitute protected activity under section 425.16, subdivision (e)(2). (*Optional, supra,* 18 Cal.App.5th at p. 114.)

There does not appear to be any dispute that the challenged cross-claims include allegations of protected activity. Wright and the Hubbards argue that the cross-claims stem from Infinity's non-protected mishandling of Wright's defense and not any protected statements made during settlement negotiations. However, this argument is simply another way of saying that Infinity cannot show the challenged claims "arise from" protected conduct under the second part of the prong one analysis. Wright and the Hubbards acknowledge the challenged claims contain allegations regarding Infinity's settlement communications. This is protected activity. Having determined that the challenged cross-claims contain allegations of protected conduct, we

10

turn to the determination of whether those claims arise from Infinity's protected activity.

### B. *The "Arising From" Requirement*

#### 1. *Legal Standards*

Infinity also bears the burden of establishing that the challenged claims arise from its protected activity. "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060; accord *Wilson, supra,* 7 Cal.5th at p. 884.)

"As courts applying the anti-SLAPP statute have recognized, the 'arising from' requirement is not always easily met. [Citations.]" (*Equilon, supra*, 29 Cal.4th at p. 66.) "In determining whether a cause of action is based on protected activity, we 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies.' [Citation.]" (*Optional, supra*, 18 Cal.App.5th at pp. 110–111.) At the same time, "courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson, supra,* 7 Cal.5th at p. 884; *Park, supra,* 2 Cal.5th at p. 1063.) "'[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park, supra*,

11

2 Cal.5th at p. 1063; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (*Rand*).)

### 2.    *The Cross-Claims Do Not "Arise From" Protected Activity*

Infinity's anti-SLAPP motion sought to strike the cross-claims asserting that Infinity breached the implied covenant of good faith and fair dealing by rejecting the Hubbards' stipulated judgment proposal.  We must determine whether the gravamen of the cross-claims arises from Infinity's protected activity.  We begin by examining the elements of a claim for breach of the implied covenant of good faith and fair dealing.

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing.  'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits.  To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.  When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.'"  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720.)  "While an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.'"  (*Ibid.*)  "'A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim.  The insurer may not just focus on those facts which justify denial of the claim.'"  (*Id.* at p. 721.)  "An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions."  (*Id.* at p. 723.)

12

The challenged portions of the cross-complaints allege Infinity breached the implied covenant by: (1) failing to accept the Hubbards' proposal "on the basis that the proposed judgment amount was excessive;" (2) rejecting the opinions of Wright's personal counsel and the mandatory settlement conference judge "and instead relying on an evaluation of the potential verdict value of the HUBBARDS' claim it knew to be unreasonable, solely for the purpose of protecting its own interests;" (3) refusing to re-evaluate the value of the Hubbards' claims against Wright "despite receiving credible information casting serious doubt on its own internal evaluation[;]" and (4) relying on the evaluations and recommendations of the "incompetent counsel" it retained to defend Wright.

The gravamen of these cross-claims is that Infinity acted unreasonably in its handling and investigation of the Hubbards' underlying claims against Wright. The injury-producing conduct alleged is Infinity's unreasonable valuation of the Hubbards' claims, unreasonable refusal to properly investigate and consider available evidence, and unreasonable reliance on the recommendations of incompetent counsel. While Wright alleges he was harmed by the rejection of the settlement offer, the principal thrust of the cross-claims is that the process by which Infinity evaluated the Hubbards' claims and defended Wright was itself unreasonable. The rejection of the stipulated judgment proposal is principally used as evidence of Infinity's allegedly deficient handling of Wright's defense.

Courts confronted with analogous bad faith claims in the insurance context have found they fall beyond the protections of the anti-SLAPP statute. In *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 252 (*Miller*), plaintiff insureds filed an action against their insurer alleging causes of action for breach of contract and breach of the implied covenant of

13

good faith and fair dealing. Plaintiffs had a counterclaim filed against them in a federal action and tendered the defense of that counterclaim to their insurer. In their action against the insurer in state court, the plaintiffs alleged the insurer improperly refused to pay for independent counsel, refused to conduct a reasonable investigation of the counterclaim, and failed to timely pay reasonable and necessary defense costs. (*Ibid*.) Plaintiffs' allegations contained numerous references to communications between the insurer and the counsel it retained to defend the plaintiffs in the federal action. (*Id*. at pp. 252–255.)

In response, the insurer brought an anti-SLAPP motion to strike the portions of plaintiffs' complaint concerning alleged communications between the insurer and retained counsel in the underlying federal action. (*Miller*, *supra*, 41 Cal.App.5th at p. 255.) The trial court denied the anti-SLAPP motion. The appellate court affirmed the denial of the insurer's anti-SLAPP motion. The appellate court concluded the insureds' claims did not arise from protected activity and instead were "based on the overarching premise that [the insurer] did not meet its duty to defend as it failed to provide independent conflict-free counsel to represent [the insureds] in defending against [a] counterclaim." (*Id*. at p. 257.) "Thus, '[w]hat gives rise to liability' is not the fact of counsel's communications, but that [the insurer] allegedly denied the [plaintiffs] the 'benefit' of panel counsel's independent professional judgment in rendering legal services to them. [Citations.] Consequently, we reject [the insurer]'s argument that the allegations of counsel's communications give rise to its liability for an action for breach of the implied covenant of good faith and fair dealing." (*Id*. at p. 258.) The *Miller* court reasoned that courts must draw a "'careful distinction between a cause of action based squarely on a privileged communication, such as an action for

14

defamation, and one based upon an underlying course of conduct evidenced by the communication.'" (*Id.* at p. 259.)

In *Trilogy Plumbing, Inc. v. Navigators Specialty Ins. Co.* (2020) 50 Cal.App.5th 920 (*Trilogy*) plaintiff sued its insurer, alleging the insurer mishandled 33 different lawsuits involving plaintiff. (*Id.* at p. 924.) Plaintiff alleged its insurer gave improper instructions to the attorney it retained to defend plaintiff and "wrongfully negotiated settlements" without plaintiff's consent. (*Ibid.*) The *Trilogy* court affirmed the denial of the insurer's anti-SLAPP motion, noting the "anti-SLAPP motion sought to strike allegations pertaining to [the insurer's] *conduct* generally in mishandling the claims process." (*Id.* at p. 932.) Relying on *Miller*, the *Trilogy* court reasoned that "references to settlement and other potentially protected activity in the allegations challenged by [the insurer] in the anti-SLAPP motion reflect evidence that provides context for the allegation [the insurer] failed to perform under the terms of the polices. Such references do not establish that [plaintiff's] action arises out of any protected activity." (*Id.* at pp. 933–934.)

Other courts have similarly found that bad faith claims against insurers fall beyond the scope of the anti-SLAPP statute. (See *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 93–94 [lawsuit against insurer for bad faith delay was not subject to the anti-SLAPP statute because it arose from delay in payment, not from insurer's protected communications]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [reversing order granting anti-SLAPP motion because claim did not arise from defendant's "communicative acts, but rather for its alleged mistreatment of policyholders and its related violations and evasions of statutory and regulatory mandates"].

15

We reach the same result here. The challenged cross-claims allege Infinity failed to properly investigate or evaluate the Hubbards' claims against Wright and retained incompetent counsel to represent Wright, culminating in the rejection of a reasonable settlement proposal. The cross-claims attack the process by which Infinity made the decision not to settle Wright's case. These claims do not arise from Infinity's protected communications during settlement negotiations.

In reaching this conclusion, we are guided by the California Supreme Court's decision in *Park, supra*, 2 Cal.5th at page 1062, which analyzed the "arising from" requirement. As *Park* explained, "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Id.* at p.1063.) Courts must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) Courts must also "distinguish between the challenged decisions and the speech that . . . thereafter expresses them." (*Id.* at p. 1067.) Under *Park* and its progeny, we must distinguish between the process by which Infinity evaluated the Hubbards' stipulated judgment proposal and Infinity's communication of its decision to reject the proposal.

Here, the cross-claims seek to hold Infinity liable for its internal handling of Wright's defense in the underlying litigation and not any protected settlement communications. Such claims fall beyond the anti-SLAPP statute. (*Park, supra*, 2 Cal.5th at p. 1068 ["The tenure decision may have been communicated orally or in writing, but that communication does not convert Park's suit to one arising from such speech"]; *Rand, supra*, 6 Cal.5th at p. 628 [anti-SLAPP statute not implicated where cause of action

16

arose from the decision not to renew a contract rather than the communication of that decision]; *ValueRock TN Properties, LLC v. PK II Larwin Square SC LP* (2019) 36 Cal.App.5th 1037, 1049–1050 [anti-SLAPP motion properly denied where tenant's claim arose from landlord's decision not to consent to an assignment even though the decision was communicated in ongoing litigation between the parties].)

The cases cited by Infinity do not compel a different result. In each action, liability was premised on a communicative act itself and not an underlying decision evidenced by the communication. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82 [challenged claim arose from communicative act of filing a lawsuit]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [challenged claim arose from defendant's statements during settlement negotiations]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834 [challenged claim arose from allegedly fraudulent statements made during settlement negotiations]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118 [challenged claim arose from false representations and omissions during settlement negotiations]; *Optional, supra,* 18 Cal.App.5th 95 [claim arose from defendants' communicative acts of representing another party in settlement negotiations]; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953 [claim arose from attorney's communicative acts in negotiating a settlement with third party] *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 [claim arose from communicative act of making a settlement offer].)

While Infinity communicated with the Hubbards and Wright as the parties attempted to settle the Hubbards' underlying lawsuit, those communications are not the alleged injury-producing conduct. There is no doubt that the challenged cross-claims were triggered by protected settlement

negotiations in the underlying lawsuit, however, "[a] claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs." (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568.)

### C. *Conclusion*

In sum, Infinity has not carried its burden to establish the challenged cross-claims arise from its protected activity. As Infinity has not satisfied the first prong of the anti-SLAPP analysis, we reverse the order granting Infinity's special motion to strike. Because Infinity has not satisfied prong one, we need not determine whether Wright and the Hubbards established a likelihood of prevailing under the second prong of the anti-SLAPP analysis. (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 43–44.) Infinity remains free to challenge the cross-claims "on other grounds and through other procedural means" and we express no view on their merits. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288.)

### III. *Infinity's Motion for Attorney's Fees and Costs*

Wright and the Hubbards also appeal the trial court's award of attorney's fees and costs to Infinity. The trial court awarded Infinity its fees and costs under section 425.15, subdivision (c), as the prevailing party on the special motion to strike. As we have reversed the granting of Infinity's motion, the statutory basis for the fee award no longer exists. "Therefore, it follows that the order awarding fees and costs cannot stand." (*Santa Monica Rent Control Bd. v. Pearl Street* (2003) 109 Cal.App.4th 1308, 1320.) Because

18

Infinity is no longer the prevailing party on its anti-SLAPP motion, we reverse the trial court's award of attorney's fees and costs as well.

## DISPOSITION

The trial court's orders granting Infinity's anti-SLAPP motion to strike and awarding Infinity its attorney's fees and costs are reversed. The case is remanded for further proceedings consistent with the views expressed here. Wright and the Hubbards are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

SIGGINS, J.*

---

*Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.